**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Scott Boyd and Kasey Kahne and*
*Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. PIZZUTO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HOMOLOGY MEDICINES, INC., ARTHUR O. TZIANABOS, W. BRADFORD SMITH, and ALBERT SEYMOUR, <br><br> Defendants. | No.: 2:22-cv-01968-FLA-JPR <br><br> **SCOTT BOYD AND KASEY KAHNE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF** <br><br> Judge: Hon. Fernando L. Aenlle-Rocha <br> Date: July 1, 2022 <br> Time: 1:30 p.m. <br> Courtroom #6B |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 3

I. THE PSLRA REQUIRES COURTS TO APPOINT A LEAD PLAINTIFF AT THE OUTSET OF THE ACTION. ................................................................. 3

II. MOVANTS BOYD AND KAHNE ARE THE PRESUMPTIVE LEAD PLAINTIFFS. ...................................................................................................... 4

A. Boyd and Kahne Possess the "Largest Financial Interest" in the Litigation Because They Have Greater Recoverable Losses, More Retained Shares, and Larger Net Investments in Homology. ............................................................... 4

B. Boyd and Kahne Meet the Typicality and Adequacy Requirements of Rule 23. ................................................................................................................ 8

C. There Is No Evidence to Rebut the Presumption in Boyd's and Kahne's Favor. ................................................................................................................ 10

III. JASON ROFEH DOES NOT DEMONSTRATE HIS FINANCIAL INTEREST IN THE LITIGATION AND IS SUBJECT TO UNIQUE DEFENSES. ............................................................................................................ 10

A. Jason Rofeh Does Not Demonstrate Any Financial Interest in the Action. 10

B. Defendants Will Attack Jason Rofeh's Assignments and Argue that He Does Not Have Standing to Pursue the Class Claims. ....................................... 11

IV. LEVI & KORSINSKY, LLP SHOULD BE APPROVED AS LEAD COUNSEL. ............................................................................................................ 13

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002)..............................................................................4, 9

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)............................................................................................................. 6

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001)............................................................. 5

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005).................................................................................6, 7, 8

*Espinoza v. Whiting*,
   Nos. 4:12cv1711 SNLJ, 4:12cv1815 RSW, 4:12cv2167 FRB, 2013 U.S. Dist. LEXIS 6227 (E.D. MO. Jan. 16, 2013) ................................................................ 8

*First Intercontinental Bank v. Ahn*,
   798 F.3d 1149 (9th Cir. 2015)...........................................................................11

*Foster v. Maxwell Techs., Inc.*,
   No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) ................................................................................................................ 6

*In re Hebron Tech. Co. Sec. Litig.*,
   2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. Sep. 16, 2020) ...............................13

*Hufnagle v. Rino Int'l Corp.*,
   No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771 (C.D. Cal. Feb. 14, 2011)..............................................................................................................10

*In re IMAX Securities Litigation*,
   No. 06-cv-6128, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009) .......12

*In re K-V Pharm. Co. Sec. Litig.*,
   No. 11CV01816 AGF, 2012 U.S. Dist. LEXIS 62161 (E.D. Mo. May 3, 2012). 7

*Knox v. Yingli Green Energy Holding Co.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................. 1

*In re LightInTheBox Holding Co., Sec. Litig.*,
   2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013)................................ 7

*Marjanian v. Allied Nev. Gold Corp.*,
   No. 3:14-cv-0175-LRH-WGC, 2014 U.S. Dist. LEXIS 203290 (D. Nev. Nov. 7, 2014) ................................................................................................................ 7

*In re Network Assocs., Inc., Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999)................................................................ 5

*In re Paysafe Ltd.*,
   No. 1:21-CV-10611-ER-KHP, 2022 U.S. Dist. LEXIS 84546 (S.D.N.Y. May 10, 2022)..............................................................................................................12

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011)................................................................................12
*Prop. California SCJLW One Corp. v. Leamy*,
   25 Cal. App. 5th 1155 (2018)..................................................................................12
*In re SLM Corp. Sec. Litig.*,
   258 F.R.D. 112 (S.D.N.Y. 2009)..............................................................................13
*In re Surebeam Corp. Sec. Litig.*,
   No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31,
   2003) ..........................................................................................................................5
*Richardson v. TVIA, Inc.*,
   No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406
   (N.D. Cal. Apr. 16, 2007) ..........................................................................................4
*Ruland v. InfoSonics Corp.*,
   No. 06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23,
   2006) ..........................................................................................................................6
*Sallustro v. Cannavest Corp.*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015) .....................................................................2, 7
*Schueneman v. Arena Pharm., Inc.*,
   No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8,
   2011) ......................................................................................................................6, 7
*Scheller v. Nutanix, Inc.*,
   No. 19-cv-01651-WHO, 2021 U.S. Dist. LEXIS 112372 (N.D. Cal. June 10,
   2021) ........................................................................................................................11
*Steiner v. Thexton*,
   48 Cal. 4th 411 (2010) ............................................................................................12
*Wallach v. Eaton Corp.*,
   837 F.3d 356 (3d Cir. 2016).....................................................................................12
*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
   No. 17-cv-04732 VAP (KSx), 2017 U.S. Dist. LEXIS 229452 (C.D. Cal. Sep.
   29, 2017)....................................................................................................................4
*In re XM Satellite Radio Holdings Sec. Litig.*,
   237 F.R.D. 13 (D.D.C. 2006)...................................................................................10

**Statutes**
15 U.S.C. § 78u-4 .............................................................................................*passim*
CAL. CIV. CODE § 1550..........................................................................................11, 12

## INTRODUCTION

The Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4) (the "PSLRA"), sets forth a clear directive in terms of appointing lead plaintiffs to serve in securities class actions. It instructs courts to appoint as "lead plaintiff" the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). That person or entity is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Movants Scott Boyd and Kasey Kahne ("Boyd/Kahne") have the largest financial interest in the class and also satisfy Rule 23's typicality and adequacy requirements. Therefore, the Court should grant their motion and approve them and their chosen counsel as lead plaintiffs and lead counsel, respectively.

Boyd/Kahne have the "largest financial interest" in the outcome of the action. Courts in this District typically evaluate financial interests using the following four factors: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *See Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015). The following table illustrates Boyd/Kahne's financial interest relative to the other movants under these four factors:

| Movant | Gross Shares | Net Shares | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Scott Boyd and Kasey Kahne | 45,000 | 45,000 | $ 617,621.73 | $ 505,092.70 |
| Jason Rofeh | 307,271 | 9,790 | $ 195,269.59 | $ 415,723.33 |
| Ronald McCall[1] | N/A | N/A | $ 64,760 | $ 49,935.00 |

[1] Ronald McCall purchased options only and does not appear to have owned any common stock during the Class Period. *See* ECF No. 15-4 at 3.

| Jeffrey Ertz | 2,100 | 1,000 | $ 18,498.40 | $ 14,419.40 |

In addition to having the "largest financial interest" in the action, Boyd/Kahne make the requisite *prima facie* showing of adequacy and typicality under Rule 23 for the purposes of triggering the PSLRA's lead plaintiff presumption. Messrs. Boyd and Kahne are two individual investors who have been friends since 2003 (*See* Joint Declaration, ECF No. 13-6 at ¶4). Mr. Boyd is the Chief Executive Officer of Karavan Trailers, LLC and considers himself to be an experienced investor having been investing in securities for fifteen years. Mr. Kahne is a professional racecar driver with three years of investing experience. They purchased stock in Homology Medicines, Inc. ("Homology") at the same time during the Class Period and sustained losses in the same manner as all other class members. Further, Messrs. Boyd and Kahne have submitted a joint declaration in support of their motion outlining their plans for serving as co-lead plaintiffs and confirming their intent to obtain the largest possible recovery for themselves and the class.

One movant, Jason Rofeh, purports to have a larger financial interest in the action. However, Mr. Rofeh's financial interest is misleadingly inflated because a significant portion of his claimed losses are ***unrecoverable*** under the law. In his motion papers, Mr. Rofeh claims to have purchased 307,271 shares during the Class Period with a total loss of $892,405. The majority of these shares were sold almost immediately after they were purchased and without resulting in any loss caused by the alleged fraud. Courts routinely discount losses that are unassociated with the allegations in the action, such as when "in-and-out" shares are bought and then sold prior to the revelation of any corrective information. *See, e.g., Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (collecting cases). In-and-out shares do not give rise to recoverable damages and, therefore, cannot be used to inflate a "financial interest" at the lead plaintiff stage. When discounting the losses supposedly incurred in connection with these shares, Mr. Rofeh's alleged

loss drops to approximately $415,000 which is well-below Boyd/Kahne's recoverable loss of over $500,000.

Mr. Rofeh's motion presents additional problems too. His supposed "financial interest" in the action is based heavily (if not exclusively) on "assignments" obtained from third-parties who appear to be his family members. These assignments require Mr. Rofeh to "remit any proceeds received" in the action to his assignors, thereby leaving Mr. Rofeh himself with little-to-no financial interest in the litigation at all whatsoever. This is especially problematic if, as it appears, the assignments upon which his motion relies are invalid under California law.

Messrs. Boyd and Kahne, unlike Mr. Rofeh, invested their own funds in Homology and therefore have personal stakes in the outcome of the litigation. With over $500,000 of potentially recoverable losses, Boyd/Kahne are by far the movants with the "largest financial interest" in the action and, therefore, are presumptively the "most adequate plaintiff[s]" for the purpose of serving as co-lead plaintiffs pursuant to the PSLRA. Further, Messrs. Boyd and Kahne have a longstanding pre-existing litigation relationship, which provides a strong foundation for them to serve as co-lead plaintiffs in this action. As Messrs. Boyd and Kahne have the largest financial interest and meet the requirements of Rule 23, they respectfully request that their motion be granted in its entirety.

## **ARGUMENT**

### **I. THE PSLRA REQUIRES COURTS TO APPOINT A LEAD PLAINTIFF AT THE OUTSET OF THE ACTION.**

The PSLRA sets forth the procedure for the selection of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as Lead Plaintiff are required to file a motion seeking

appointment within 60 days thereafter. 15 U.S.C. § 78u- 4(a)(3)(A)(i). From the movants that file timely motions, the presumptive "most adequate plaintiff" is the "person" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The movant with the largest financial interest need only make a *prima facie* showing that it satisfies Rule 23's typicality and adequacy requirements. *See In re Cavanaugh*, 306 F.3d 726 at 729-31 (9th Cir. 2002). Once triggered, this presumption can only be rebutted upon "actual proof" that the "most adequate plaintiff" will not fairly represent the interests of the class or is subject to a unique defense. *Id*. at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## II.    MOVANTS BOYD AND KAHNE ARE THE PRESUMPTIVE LEAD PLAINTIFFS.

### A.    Boyd and Kahne Possess the "Largest Financial Interest" in the Litigation Because They Have Greater Recoverable Losses, More Retained Shares, and Larger Net Investments in Homology.

When deciding among competing lead plaintiff movants, the Court must first determine which investor possesses the largest financial interest, and then – absent any showing that could rebut such movant's adequacy or typicality – appoint that investor as lead plaintiff. 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb); *Cavanaugh*, 306 F.3d at 729. Courts in this District routinely consider four factors when evaluating a movant's financial interests in the litigation: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Knox*, 136 F. Supp. 3d at 1163 (internal quotations omitted); *see also Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*, No. 17-cv-04732 VAP (KSx), 2017 U.S. Dist. LEXIS 229452, at *14 (C.D. Cal. Sep. 29, 2017); *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS

28406, at *11 (N.D. Cal. Apr. 16, 2007); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *11 (S.D. Cal. Dec. 31, 2003).

Using these four factors, the following table provides the financial interests of each movant:

| Movant | Gross Shares | Net Shares | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Scott Boyd and Kasey Kahne | 45,000 | 45,000 | $ 617,621.73 | $ 505,092.70 |
| Jason Rofeh | 307,271 | 9,790 | $ 195,269.59 | $ 415,723.33 |
| Ronald McCall | N/A | N/A | $64,760 | $ 49,935.00 |
| Jeffrey Ertz | 2,100 | 1,000 | $ 18,498.40 | $ 14,419.40 |

*See* ECF Nos. 11-3, 13-4, 15-5, and 19-2.

Boyd/Kahne have more net shares, greater net funds expended, and greater recoverable losses than any of the other movants. Thus, for three out of the four factors considered by courts within this District, Boyd/Kahne have the largest financial interest in the litigation. Two of these factors, net shares purchased and financial loss, are typically considered to be the most important and are often given the most weight by courts when evaluating a movant's financial interest. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("[T]he candidate with the most net shares purchased will normally have the largest potential damage recovery."); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("The Court considers [net shares purchased] the most straightforward method for approximation of financial interest in the recovery sought, but considers that it should be supplemented with in/out losses, i.e., losses suffered by selling shares during the class period.").

While Jason Rofeh (including the Mark Rofeh Trust, Justin Rofeh, Manaz Rofeh, and Michelle Rofeh-Lensky) purchased more shares during the Class Period,

the purchase of these shares is irrelevant because the majority of the shares were subsequently sold ***intra***-Class Period in transactions unaffected by the alleged fraud, meaning that any losses incurred from those transactions are ***not*** recoverable and do not count towards Mr. Rofeh's purported financial interest in the litigation.

In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005)*,* the Supreme Court held that investors cannot recover under the federal securities laws for economic loss unless the loss was directly caused by or related to the disclosure of the fraud. *Id.* at 344-46 (holding that plaintiffs "must prove proximate causation and economic loss"). Accordingly, where an investor purchases stock at a price inflated by a fraudulent misrepresentation or omission and sells the stock before any disclosure of the fraud (*i.e.*, an "in-and-out" trade), the investor has suffered no loss caused by the fraud even though they may have lost money on their investment. *Dura*, 544 U.S. at 342-343 (when a "purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

Courts apply *Dura* when evaluating lead plaintiff movants' financial interests in litigation because "it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed." *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at \*1 (S.D. Cal. Aug. 8, 2011). "[T]he logical outgrowth of [the *Dura*] holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at \*13 (E.D.N.Y. Mar. 2, 2007). In line with the holding in *Dura*, courts have used the amount of potential recovery in the relief sought by the class when determining the "largest financial interest." *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at \*9 (S.D. Cal. Oct. 24, 2013) ("This Court focuses on the amount of potential recovery in the relief sought by the class."); *Ruland v. InfoSonics Corp.*,

No. 06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144, at *16-17 (S.D. Cal. Oct. 23, 2006) (finding for lead plaintiff purposes the individual with the "largest potential recovery" as the presumptive lead plaintiff); *see also Sallustro*, 93 F. Supp. 3d at 273 ("when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures"); *In re LightInTheBox Holding Co., Sec. Litig.*, 2013 U.S. Dist. LEXIS 165842, at *10 (S.D.N.Y. Nov. 21, 2013) ("While the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint lead counsel."). This methodology connects the share price decline to corrective information and results in loss figures that are recoverable under *Dura*. *See In re K-V Pharm. Co. Sec. Litig.*, No. 11CV01816 AGF, 2012 U.S. Dist. LEXIS 62161, at *11 (E.D. Mo. May 3, 2012) ("[F]or purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.") (quoting *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *14).

Thus, when applying *Dura* and disregarding any losses attributable to "in-and-out" trades (*i.e.*, trades resulting in losses that were not caused by the alleged fraud), Mr. Rofeh's **recoverable** loss in the action is approximately $415,000. *See* Supplemental Declaration of Adam M. Apton, Exhibit A (spreadsheet identifying non-causally related losses and calculating Mr. Rofeh's recoverable loss). As a result, Boyd/Kahne have the largest financial interest in the relief sought among the competing movants. *See Marjanian v. Allied Nev. Gold Corp.*, No. 3:14-cv-0175-LRH-WGC, 2014 U.S. Dist. LEXIS 203290, at *17 (D. Nev. Nov. 7, 2014) ("This figure includes sales of the stock that occurred . . . before Allied Nevada revealed their misrepresentations . . . . Including these sales in the calculation of total losses risks what *Dura* sought to prevent: loss figures that take into account not just losses caused by the fraud, but also 'changed economic circumstances, changed investor expectations, new industry-specific or firm specific facts, conditions, or other

events, which taken separately or together account for some or all of that lower price.'") (citations omitted); *Espinoza v. Whiting*, Nos. 4:12cv1711 SNLJ, 4:12cv1815 RSW, 4:12cv2167 FRB, 2013 U.S. Dist. LEXIS 6227, at *10 (E.D. MO. Jan. 16, 2013) (the "Patriot Coal Investor Group's well-reasoned approach addresses the problems the *Dura* Court and others have cautioned against.").

**B.    Boyd and Kahne Meet the Typicality and Adequacy Requirements of Rule 23.**

As supported by their Joint Declaration, Mr. Boyd currently resides in Beaver Dam, Wisconsin. *See* Joint Declaration, ECF No. 13-6 at ¶4. He possesses a high school degree and he is currently employed as the Chief Executive Officer of Karavan Trailers, LLC. *Id*. at ¶4. Mr. Boyd considers himself to be an experienced investor having been investing in securities for fifteen years. *Id*. at ¶4. Mr. Boyd decided to seek appointment as lead plaintiff initially, and then contacted Mr. Kahne, to see if he would be interested in serving as co-lead plaintiff. *Id*. at ¶4. They have been friends since approximately 2003 and Mr. Boyd knew that Mr. Kahne, too, sustained significant losses as a result of his investment in Homology. *Id*. at ¶4. Mr. Kahne currently resides in Mooresville, North Carolina. *Id*. at ¶5. He graduated high school in Enumclaw, Washington, in 1999 and began a full time career in professional racing thereafter. *Id*. at ¶5. Mr. Kahne has been investing in stocks for approximately the past three years. *Id*. at ¶5. He decided to seek appointment as lead plaintiff with his friend, Mr. Boyd, after speaking with him about this action. *Id*. at ¶5.

Messrs. Boyd and Kahne understand that they have a fiduciary duty to the class to provide effective representation and to ensure that Lead Counsel effectively litigates the action. *Id*. at ¶7. As co-lead plaintiffs they will provide fair and adequate representation, oversee counsel, and obtain the largest possible recovery against all culpable parties consistent with good faith and vigorous advocacy. *Id*. at ¶7. Messrs. Boyd and Kahne have agreed to actively manage the prosecution of the action by

reviewing documents, having joint calls, discussing through email any developments, participating in discovery, and exercising joint decision-making to execute a strategy to maximize the recovery of the entire class. *Id*. at ¶8.

They are confident in their ability to reach joint decisions regarding litigation matters, having maintained a friendship since 2003. However, if in the unlikely event that they ever disagree on any issue, Mr. Boyd will ultimately have discretion given his additional investment experience and his larger financial interest in the outcome of this action. *Id*. at ¶8. Messrs. Boyd and Kahne plan to supervise their chosen counsel, Levi & Korsinsky, to ensure that the action is prosecuted efficiently and effectively for the benefit of the class. *Id*. at ¶10. They will direct Levi & Korsinsky to prosecute the action in such a way to achieve a fair result for all members of the class. *Id*. at ¶10. Communication procedures have been implemented to ensure that Messrs. Boyd and Kahne can communicate quickly and make decisions on short notice. *Id*. at ¶10. They understand that meetings, conference calls, and communications may be conducted without counsel, and that they can call for a meeting or conference call at any time. *Id*. at ¶10. Messrs. Boyd and Kahne do not anticipate any problems communicating with one another, and agree to contact one another when necessary to facilitate the best interests of the class and to prosecute the action. *Id*. at ¶10. They have instructed counsel to keep them informed of any developments in the action and will continue to direct counsel and oversee the prosecution of the action for the benefit of the class by reviewing pleadings, orders, and motion papers and conferring amongst themselves. *Id*. at ¶11. Finally, Messrs. Boyd and Kahne have agreed to make themselves available to personally travel for any appearances, depositions, settlement hearings, and other necessary meetings to facilitate the prosecution of the action. *Id*. at ¶11.

**C.    There Is No Evidence to Rebut the Presumption in Boyd's and Kahne's Favor.**

Boyd/Kahne's evidentiary showing on the motion trigger the PSLRA's "presumption" of "most adequate plaintiff." *Cavanaugh*, 306 F.3d at 729-31. This presumption may be rebutted only upon proof by a class member that they "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II). The other movants have not and cannot do this. *See Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF(VBKx), 2011 U.S. Dist. LEXIS 19771, at *10 (C.D. Cal. Feb. 14, 2011) (unique defense not present where movant failed to submit proof).

## III.    JASON ROFEH DOES NOT DEMONSTRATE HIS FINANCIAL INTEREST IN THE LITIGATION AND IS SUBJECT TO UNIQUE DEFENSES.

**A. Jason Rofeh Does Not Demonstrate Any Financial Interest in the Action.**

Congress, in enacting the PSLRA, sought "to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.,* No. 15-cv-3599-KMW, 2015 U.S. Dist. LEXIS 153202, at *4-5 (S.D.N.Y. Nov. 12, 2015). "The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff . . . would be motivated to act like a real client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." *Id; see also In re XM Satellite Radio Holdings Sec. Litig.,* 237 F.R.D. 13, 17 (D.D.C. 2006) ("Congress sought to attract lead plaintiffs with a significant financial stake in the litigation on the assumption that they would be more likely to play an active role in directing and

overseeing the litigation.").

Congress's intent in this regard is important because it stands squarely in the way of appointing Jason Rofeh as the lead plaintiff in this action. Mr. Rofeh's "financial interest" in this litigation is comprised of the trading losses sustained by the Mark Rofeh Trust, Justin Rofeh, Manaz Rofeh, and Michelle Rofeh-Lensky; to be clear, Mr. Rofeh does not specify which of the six trading accounts underlying his motion belong to him or if, in fact, all of the accounts belong to the aforementioned assignors. While Mr. Rofeh obtained assignments from these individuals and entities, the assignments at bar explicitly state that Mr. Rofeh, as assignee, "agrees to remit any proceeds received as a result of this assignment to the Assignor." *See* ECF No. 19-1 at pp. 2-5. Consequently, the assignments provide Mr. Rofeh with no greater financial interest in the litigation than he otherwise had prior to their execution; in other words, Mr. Rofeh is no more or less motivated to litigate this case as a result of the assignments. To illustrate, if Mr. Rofeh owned only "Account 1" which had a net ***gain*** from trading Homology stock (*see* Supplemental Declaration of Adam M. Apton), then he would be entirely unsuited to serve as the lead plaintiff given his status as a net gainer who benefited from the alleged fraud. *See Scheller v. Nutanix, Inc.*, No. 19-cv-01651-WHO, 2021 U.S. Dist. LEXIS 112372, at *20 (N.D. Cal. June 10, 2021) (disqualifying "net gainer" from serving as lead plaintiff). Given the fact that Mr. Rofeh's individual loss, if any, is unknown, he does not establish that he has any "financial interest" in the litigation. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

**B. Defendants Will Attack Jason Rofeh's Assignments and Argue that He Does Not Have Standing to Pursue the Class Claims.**

Mr. Rofeh's assignments also give rise to "unique defenses" that interfere with his ability to serve as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The assignments he relies upon require him to remit all proceeds back to the assignor, meaning that the assignments were made for no "consideration." *See* ECF No. 19-

1 at pp. 2-5. Mr. Rofeh and his assignors reside in California. *See* ECF No. 19-5 at ¶2. Thus, the assignments at bar are subject to California law. *See First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015). Under California law, an assignment needs "consideration" for it to be valid. Indeed, a contract requires (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) consideration. CAL. CIV. CODE § 1550. Consideration is "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor." CAL. CIV. CODE § 1605. "Consideration is present when the promisee confers a benefit or suffers a prejudice." *Prop. California SCJLW One Corp. v. Leamy*, 25 Cal. App. 5th 1155, 1165 (2018). The benefit or prejudice must "actually be bargained for as the exchange for the promise." *Id*. (internal quotation marks and citation omitted). In other words, "the benefit or prejudice must have induced the promisor's promise." *Steiner v. Thexton*, 48 Cal. 4th 411, 421 (2010). Having assigned their interests to Mr. Rofeh for no "consideration" (as evidenced by the lack of such in the assignment agreements themselves), they are invalid under California law and rendered a nullity for the purposes of the lead plaintiff motion.

Mr. Rofeh's assignments are susceptible to attacks from the defendants in this action. If those attacks are successful, Mr. Rofeh may lose standing to pursue the class claims on behalf of the class members. *See In re Paysafe Ltd.*, No. 1:21-CV-10611-ER-KHP, 2022 U.S. Dist. LEXIS 84546, at *22-23 (S.D.N.Y. May 10, 2022) (noting that assignments could be challenged by defendants and give rise to unique defenses); *see also Wallach v. Eaton Corp.,* 837 F.3d 356, 361 (3d Cir. 2016) (defendants arguments regarding consideration to confer standing by way of assignment became major focus of an antitrust claim); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,* 275 F.R.D. 187, 191 (S.D.N.Y. 2011)

("At this stage, however, it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class."). As the Court observed in *In re IMAX Securities Litigation*, No. 06-cv-6128, 2009 U.S. Dist. LEXIS 58219, at \*11 (S.D.N.Y. June 29, 2009): "irrespective of whether the assignments of claim cure [lead plaintiff's] deficient Article III standing, [it] now faces unique legal issues that other class members do not. Were we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal. There seems little reason for us to subject the class members to such a risk." *Id*. at \*3 (quoting *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116-17 (S.D.N.Y. 2009) (court replaced a previously-appointed lead plaintiff who had assigned claims with a movant who purchased in the open-market)).

"[B]ecause the PSLRA requires proof that the movant is merely 'subject to' unique defenses, 'many courts have rejected appointments of lead plaintiffs based on potential risks.' Thus, '[b]efore disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed.' Rather, it must only find 'at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses.' This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may 'divert attention from the substance of the basic claim,' and class members are 'entitled to be represented by someone unhindered by' such distractions." *In re Hebron Tech. Co. Sec. Litig.*, 2020 U.S. Dist. LEXIS 169480, at \*17 (S.D.N.Y. Sep. 16, 2020) (citations omitted).

## IV.    LEVI & KORSINSKY, LLP SHOULD BE APPROVED AS LEAD COUNSEL.

This Court should approve Boyd's and Kahne's selection of Levi & Korsinsky as Lead Counsel. The PSLRA vests authority in the lead plaintiff to select and retain lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). Numerous courts

throughout the country have appointed Levi & Korsinsky as lead counsel in securities class action lawsuits. *See* ECF No. 13-7. With approximately 30 attorneys across five different offices, including an office in this district, Levi & Korsinsky stands ready, willing and able to prosecute this case. *Id*.

### CONCLUSION

Messrs. Boyd and Kahne have the "largest financial interest" in the action and otherwise meet the typicality and adequacy reuqirements of Rule 23. No proof exists to show that they are inadequate or otherwise unsuited to serve as the lead plantiffs in this action. Accordingly, Messrs. Boyd and Kahne respectfully submit that the Court DENY the motions of the competing movants, and issue an Order GRANTING their motion in its entirety.

Dated: June 10, 2022                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Scott Boyd and Kasey Kahne and Proposed Lead Counsel for the Class*