**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Scott Boyd and Kasey Kahne and*
*Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. PIZZUTO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HOMOLOGY MEDICINES, INC., ARTHUR O. TZIANABOS, W. BRADFORD SMITH, and ALBERT SEYMOUR,<br><br>Defendants. | No.: 2:22-cv-01968-FLA-JPR<br><br>**SCOTT BOYD AND KASEY KAHNE'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY AND FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>Judge: Hon. Fernando L. Aenlle-Rocha<br>Date: July 1, 2022<br>Time: 1:30 p.m.<br>Courtroom #6B |

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 3

   I.   ROFEH MISSTATES THE LAW ON "FINANCIAL INTEREST"............ 3

   II.  ROFEH FAILS TO DEMONSTRATE HIS FINANCIAL INTEREST IN THE ACTION OR OTHERWISE SHOW HE IS NOT SUBJECT TO UNIQUE DEFENSES. ...................................................................................... 6

   III.   MOVANTS BOYD AND KAHNE ARE THE PRESUMPTIVE LEAD PLAINTIFFS. ................................................................................................. 8

CONCLUSION ...................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*In re Critical Path, Inc. Sec. Litig.*,
 156 F. Supp. 2d 1102 (N.D. Cal. 2001)................................................................ 6

*Dura Pharmaceuticals, Inc. v. Broudo*,
 544 U.S. 336 (2005).................................................................................4, 5

*In re Hebron Tech. Co. Sec. Litig.*,
 2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. Sep. 16, 2020) .................................. 7

*Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
 549 F.3d 100 (2d Cir. 2008)................................................................................ 6

*In re IMAX Securities Litigation*,
 No. 06-cv-6128, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009) ........ 7

*Mersho v. United States Dist. Court*,
 6 F.4th 891 (U.S. 9th Cir. 2021)......................................................................... 8

*In re Network Assocs., Inc., Sec. Litig.*,
 76 F. Supp. 2d 1017 (N.D. Cal. 1999) ............................................................... 6

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
 779 F.3d 1036 (9th Cir. 2015) ............................................................................ 6

*Perlmutter v. Intuitive Surgical, Inc.*,
 No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15,
 2011) ................................................................................................................... 5

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
 275 F.R.D. 187 (S.D.N.Y. 2011)........................................................................ 7

*Richardson v. TVIA, Inc.*,
 No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16,
 2007) ................................................................................................................... 4

*Sallustro v. Cannavest Corp.*,
 93 F. Supp. 3d 265 (S.D.N.Y. 2015) .............................................................2, 5

*Schueneman v. Arena Pharm., Inc.*,
 No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8,
 2011) ................................................................................................................... 5

*In re Surebeam Corp. Sec. Litig.*,
 No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31,
 2003) ................................................................................................................... 4

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
 No. 17-cv-04732 VAP (KSx), 2017 U.S. Dist. LEXIS 229452 (C.D. Cal. Sep.
 29, 2017).............................................................................................................. 4

**Statutes**

15 U.S.C. § 78u-4(a)................................................................................................ 6

**Rules**

Cal. Civ. Code § 1550.......................................................................................... 7

**INTRODUCTION**

Movants Scott Boyd and Kasey Kahne ("Boyd/Kahne") are two individual investors who have been friends since 2003. During the Class Period (June 10, 2019 through February 18, 2022), Messrs. Boyd and Kahne invested $617,621.73 purchasing 45,000 shares of Homology Medicines, Inc. ("Homology"). This investment ultimately resulted in a loss of $505,092.70. Boyd/Kahne now seek to lead this class action lawsuit against Defendants to recover their losses and the losses sustained by the class. As the movants with the "largest financial interest" in the litigation and because Boyd/Kahne meet the typicality and adequacy requirements of Rule 23, the Court should grant their motion and approve them and their chosen counsel as lead plaintiffs and lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Only one movant, Jason Rofeh, claims to have a larger financial interest in the action. However, Mr. Rofeh misstates the law on "financial interest." Courts in this District typically evaluate financial interests using the following four factors:

> (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.

*Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (internal quotations omitted). Mr. Rofeh disregards that these factors examine "***net***" shares purchased and "***net***" funds expended in an effort to provide an artificially inflated presentation of his "financial interest" in the case. *See* Rofeh Opposition, ECF No. 30 at 4-5. The following table illustrates Boyd/Kahne's financial interest relative to Mr. Rofeh under the ***correct*** factors used by the courts:

| Movant[1] | Gross Shares | Net Shares | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Scott Boyd and Kasey Kahne | 45,000 | 45,000 | $ 617,621.73 | $ 505,092.70 |
| Jason Rofeh | 307,271 | 9,790 | $ 195,269.59 | $ 415,723.33 |

As shown in the chart above, Boyd/Kahne have the "largest financial interest" in the outcome of the action. This is largely due to the fact that Mr. Rofeh (or, to be specific, his assignors) sold the majority of his shares prior to the end of the Class Period and before the revelation of any corrective information. In his motion papers, Mr. Rofeh claims to have purchased 307,271 shares during the Class Period but the majority of these shares were sold almost immediately after they were purchased and without resulting in any loss caused by the alleged fraud. Courts routinely discount losses that are unassociated with the allegations in the action, such as when "in-and-out" shares are bought and then sold prior to the revelation of any corrective information. *See, e.g., Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (collecting cases). In-and-out shares do not give rise to recoverable damages and, therefore, cannot be used to inflate a "financial interest" at the lead plaintiff stage. When discounting the losses supposedly incurred in connection with these shares, Mr. Rofeh's alleged loss drops to approximately $415,000 which is well-below Boyd/Kahne's recoverable loss of over $500,000. Boyd/Kahne, therefore, have a larger financial interest than Mr. Rofeh under three out of the four factors considered by courts when evaluating financial interests at the lead plaintiff stage.

Mr. Rofeh also fails to demonstrate that he personally has standing to pursue the claims alleged in the action or otherwise show he is not subject to unique defenses. Although he claims losses originating from six separate trading accounts,

---

[1] Movants Ronald McCall and Jeffrey Ertz filed notices of non-opposition and/or withdrew their motions for lead plaintiff after recognizing that they did not possess the largest financial interest in the action. ECF Nos. 21 (Ertz), 28 (McCall).

Mr. Rofeh did not identify which of the six accounts he owned in his opening motion or opposition. Thus, it remains unknown whether he personally traded any Homology stock during the Class Period or is relying entirely on the assignments he received from third-party family members for the purposes of establishing Article III standing to pursue the alleged claims. This raises significant problems. Without personal ownership of Homology securities, his ability to pursue the claims at bar will be challenged because the assignments on which he relies appear to be invalid for lack of consideration.

Messrs. Boyd and Kahne, unlike Mr. Rofeh, have a direct financial interest in the outcome of this litigation. Boyd/Kahne invested their own funds in Homology and have over $500,000 in potentially recoverable losses. Their longstanding pre-litigation relationship provides a strong foundation for them to work cohesively and cooperative to oversee this litigation. *See* Joint Declaration, ECF No. 13-6 at ¶4. They are the movants with the "largest financial interest" in the action and, therefore, are presumptively the "most adequate plaintiff[s]" for the purpose of serving as co-lead plaintiffs pursuant to the PSLRA. As Messrs. Boyd and Kahne have the largest financial interest and meet the requirements of Rule 23, they are the presumptive lead plaintiffs. They respectfully request that the Court grant their motion in its entirety.

## ARGUMENT

## I.    ROFEH MISSTATES THE LAW ON "FINANCIAL INTEREST".

Courts in this District review financial interests under four different factors, as stated in *Knox v. Yingli Green Energy Holding Co., supra*. Although Mr. Rofeh cites this case in his brief, he misstates the four factors utilized by the courts. The four factors are: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Knox*, 136 F. Supp. 3d at 1163 (internal quotations omitted); *see also Waterford Twp.*

*Police & Fire Ret. Sys. V. Mattel, Inc.*, No. 17-cv-04732 VAP (KSx), 2017 U.S. Dist. LEXIS 229452, at *14 (C.D. Cal. Sep. 29, 2017); *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *11 (N.D. Cal. Apr. 16, 2007); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *11 (S.D. Cal. Dec. 31, 2003). Mr. Rofeh disregards that these factors examine "*net*" shares purchased and "*net*" funds expended in an effort to provide an artificially inflated presentation of his "financial interest" in the case. *See* Rofeh Opposition, ECF No. 30 at 4-5.[2]

The following table compares Boyd/Kahne's and Rofeh's "financial interest" under the *correct* factors used by the courts:

| **Movant** | **Gross Shares** | **Net Shares** | **Net Funds Expended** | **Recoverable Losses** |
|---|---|---|---|---|
| Scott Boyd and Kasey Kahne | 45,000 | 45,000 | $ 617,621.73 | $ 505,092.70 |
| Jason Rofeh | 307,271 | 9,790 | $ 195,269.59 | $ 415,723.33 |

As demonstrated above, Boyd/Kahne have the larger "financial interest" in this case. Mr. Rofeh (or, to be specific, his assignors) sold the majority of his shares prior to the end of the Class Period and before the revelation of any corrective information. As Boyd/Kahne explained in their opposition (ECF No. 29 at 5-8), investors cannot recover under the federal securities laws for economic loss unless the loss was directly caused by or related to the disclosure of the fraud. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 344-46 (2005). Thus, when an investor purchases stock at a price inflated by a fraudulent misrepresentation or

---

[2] Mr. Rofeh describes the four factors as follows: "Second to financial loss, courts in this Circuit consider three other factors—shares purchased, funds expended, and net shares purchased (*i.e.* retained shares)—in assessing financial interest." The cases he cites for authority, including *Knox v. Yingli Green Energy Co.*, do not support him but instead confirm that courts consider "net shares purchased" and "net funds expended," as Boyd/Kahne argue.

omission and sells the stock before any disclosure of the fraud (*i.e.*, an "in-and-out" trade), the investor has suffered no loss caused by the fraud even though they may have lost money on their investment. *Id*. at 342-343 (when a "purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Courts apply *Dura* when evaluating lead plaintiff movants' financial interests in litigation because "it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed." *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *1 (S.D. Cal. Aug. 8, 2011); *see also Sallustro*, 93 F. Supp. 3d at 273 ("when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures"). When applying *Dura* and disregarding any losses attributable to "in-and-out" trades, Mr. Rofeh's loss in the action is approximately $415,000 compared to Boyd/Kahne's loss of over $505,000. *See* Supplemental Declaration of Adam M. Apton, Exhibit A (spreadsheet identifying non-causally related losses and calculating Mr. Rofeh's recoverable loss) (ECF No. 29-2).

In addition to having a greater loss, Boyd/Kahne also have a larger "financial interest" under two of the remaining three factors. Specifically, Boyd/Kahne's "net shares purchased during the class period" was 45,000 and "the total net funds expended during the class period" was $617,621.73, compared to Mr. Rofeh who had only 9,790 net shares purchased and $195,269.59 net funds expended during the Class Period. *Compare* ECF No. 13-4 at 2 (Boyd/Kahne loss chart) *with* ECF No. 29-2 at 13 (Rofeh loss analysis). Thus, when considering the majority of the factors used by courts in this District to evaluate "financial interest," Boyd/Kahne have the larger interest in the outcome of the action. *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *36-38 (N.D. Cal. Feb. 15, 2011) (balancing "financial interest" factors and concluding that

movant with more net shares purchased and net funds expended had "largest financial interest"); *see also In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("The Court considers [net shares purchased] the most straightforward method for approximation of financial interest in the recovery sought, but considers that it should be supplemented with in/out losses, i.e., losses suffered by selling shares during the class period."); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("[T]he candidate with the most net shares purchased will normally have the largest potential damage recovery.").

## II.   ROFEH FAILS TO DEMONSTRATE HIS FINANCIAL INTEREST IN THE ACTION OR OTHERWISE SHOW HE IS NOT SUBJECT TO UNIQUE DEFENSES.

Mr. Rofeh's motion is premised on trades originating from six different brokerage accounts. *See* ECF No. 19-2. However, Mr. Rofeh has failed to identify which of the six accounts he owned (if any). Thus, it remains unknown whether he personally traded any Homology stock during the Class Period or is relying entirely on the assignments he received from third-party family members. This raises significant problems because Mr. Rofeh does not appear to have Article III standing to pursue the claims alleged in this class action. *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043-44, 1048 (9th Cir. 2015); *Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008). Without personal ownership of Homology securities, his ability to pursue the claims at bar depends entirely on the validity of the assignments attached to his motion. *See* ECF No. 19-1 at 2-5. Given that these assignments appear to be invalid for lack of consideration, Mr. Rofeh is subject to "unique defenses" that preclude him from serving as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The assignments he relies upon require him to remit all proceeds back to the assignor, meaning that the assignments were made for no "consideration." *See* ECF

No. 19-1 at pp. 2-5. Mr. Rofeh and his assignors reside in California. *See* ECF No. 19-5 at ¶2. Thus, the assignments at bar are subject to California law, which require "consideration" for them to be valid. *See* CAL. CIV. CODE § 1550. Having assigned their interests to Mr. Rofeh for no "consideration" (as evidenced by the lack of such in the assignment agreements themselves), they are invalid under California law and rendered a nullity for the purposes of the lead plaintiff motion.

"[B]ecause the PSLRA requires proof that the movant is merely 'subject to' unique defenses, 'many courts have rejected appointments of lead plaintiffs based on potential risks.' Thus, '[b]efore disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed.' Rather, it must only find 'at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses.' This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may 'divert attention from the substance of the basic claim,' and class members are 'entitled to be represented by someone unhindered by' such distractions." *In re Hebron Tech. Co. Sec. Litig.*, 2020 U.S. Dist. LEXIS 169480, at \*17 (S.D.N.Y. Sep. 16, 2020) (citations omitted). Mr. Rofeh's assignments make him "subject to" a unique defense which prevents him from serving as the lead plaintiff. *See*, *e.g.*, *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,* 275 F.R.D. 187, 191 (S.D.N.Y. 2011) ("At this stage, however, it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense an" may prejudice the class."); *In re IMAX Securities Litigation*, No. 06-cv-6128, 2009 U.S. Dist. LEXIS 58219, at \*11 (S.D.N.Y. June 29, 2009) ("irrespective of whether the assignments of claim cure [lead plaintiff's] deficient Article III standing, [it] now faces unique legal issues that other class members do not. Were we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent

appeal. There seems little reason for us to subject the class members to such a risk.").

### III.    MOVANTS BOYD AND KAHNE ARE THE PRESUMPTIVE LEAD PLAINTIFFS.

Messrs. Boyd and Kahne have a direct financial interest in the outcome of the litigation with $505,092.70 in recoverable losses. Boyd and Kahne are two individual investors who have been friends since 2003 (*See* Joint Declaration, ECF No. 13-6 at ¶4). Their longstanding pre-litigation relationship provides a strong foundation for them to work cohesively and cooperative to oversee this litigation. Messrs. Boyd and Kahne have submitted a joint declaration in support of their motion outlining their plans for serving as co-lead plaintiffs and confirming their intent to obtain the largest possible recovery for themselves and the class. They have the largest financial interest in the litigation and satisfy Rule 23. *See Mersho v. United States Dist. Court*, 6 F.4th 891, 901-02 (U.S. 9th Cir. 2021) (noting that courts "often consider a pre-litigation relationship" when deciding whether to appoint a group of investors as the lead plaintiff).

### CONCLUSION

Messrs. Boyd and Kahne have the "largest financial interest" in the action and otherwise meet the typicality and adequacy reuqirements of Rule 23. No proof exists to show that they are inadequate or otherwise unsuited to serve as the lead plantiffs in this action. Accordingly, Messrs. Boyd and Kahne respectfully request that the Court GRANT their motion in its entirety.

//

//

//

//

//

//

//

Dated: June 17, 2022                          Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Scott Boyd and Kasey Kahne
and Proposed Lead Counsel for the Class*