POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

*Attorney for Movant Jason Rofeh*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. PIZZUTO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HOMOLOGY MEDICINES, INC., ARTHUR O. TZIANABOS, W. BRADFORD SMITH, and ALBERT SEYMOUR, <br><br> Defendants. | Case No. 2:22-cv-01968-FLA-JPR <br><br> REPLY MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF JASON ROFEH FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS <br><br> DATE:  July 1, 2022 <br> TIME:  1:30 p.m. <br> JUDGE:  Fernando L. Aenlle-Rocha <br> CTRM:  6B (1st Street Courthouse) |

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................1

II.  ARGUMENT ........................................................................................................4

     A.   *Dura* Principles Are Not Applied to Assess Financial Interest at the
          Lead Plaintiff Appointment Stage ..........................................................4

     B.   ROFEH'S ASSIGNMENTS ARE VALID AND ROFEH
          INDIVIDUALLY INCURRED LOSSES ................................................7

III. CONCLUSION ....................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*, No. 2:17-CV-6454,
     2018 WL 1960444 (D.N.J. Apr. 25, 2018) ...............................................................3, 9

*Blitz v. AgFeed Indus.*,
     2012 U.S. Dist. LEXIS 49849 (M.D. Tenn. Apr. 10, 2012) ....................................3, 5

*Cook v. Allergan PLC*, 18 Civ. 12089 (CM) *et al.*,
     2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019).......................................2, 4

*Doctor's Assocs., Inc. v. Alemayehu*,
     934 F.3d 245 (2d Cir. 2019) ...................................................................................3, 8

*Dura Pharmaceuticals, Inc. v. Broudo*,
     54 U.S. 336 (2005)....................................................................................................*passim*

*Fialkov v. Celladon Corp.*,
     2015 U.S. Dist. LEXIS 192311 (S.D. Cal. Dec. 9, 2015) ............................................6

*In re Gentiva Sec. Litig.*,
     281 F.R.D. 108 (E.D.N.Y. 2012)..................................................................................6

*In re Take-Two Interactive Sec. Litig.*,
     551 F. Supp. 2d 247 (S.D.N.Y. 2008) ........................................................................6

*In re Watchguard Sec. Litig.*, No. C05-678JLR,
     2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005)....................................5, 7

*Juliar v. Sunopta Inc.*,
     2009 U.S. Dist. LEXIS 58118 (S.D.N.Y. Jan. 30, 2009) .............................................6

*Kux-Kardos v. VimpelCom, Ltd.*,
     151 F. Supp. 3d 471 (S.D.N.Y. 2016) .........................................................................6

*Plaut v. The Goldman Sachs Group, Inc.*, 18-CV-12084 (VSB),
     2019 U.S. Dist. LEXIS 160255 (S.D.N.Y. Sept. 19, 2019) ....................................4, 5

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
    256 F.R.D. 620 (E.D. Wis. 2009) ................................................................................. 5

*Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO,
    2013 WL 6354597 (N.D. Cal. Dec. 3, 2013) ........................................................... 3, 8

## **Statutes**

15 U.S.C. § 78u-4 ............................................................................................................... 1

PSLRA ........................................................................................................................... 1, 2, 5

## **Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 1, 2

Movant Rofeh[1] respectfully submits this Reply Memorandum of Points and Authorities in further support of his motion for appointment as Lead Plaintiff for the Class and approval of his selection of Pomerantz as Lead Counsel for the Class (Dkt. No. 17); and in opposition to the competing motion of Boyd and Kahne (Dkt. No. 13).[2]

## I.   PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption can *only* be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the presumptive "most adequate plaintiff"—*i.e.*, the presumptive Lead Plaintiff—is Rofeh, who pursues recovery of losses of approximately $892,405 incurred by himself and by certain family members and related trusts—each of which duly assigned their claims in this litigation to Rofeh (*see* Dkt. No. 19-1)—in connection with the Defendants' alleged fraud.  Rofeh has also made the requisite showings of typicality and

---

[1] All capitalized terms herein are defined in Rofeh's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 18, 30.

[2] Initially two other putative Class members, Ertz and McCall, filed similar competing motions. Dkt. Nos. 9, 15.  Ertz subsequently withdrew his motion (Dkt. No. 21), while McCall filed a notice of non-opposition with respect to the competing motions (Dkt. No. 28).

adequacy under Rule 23.  Rofeh is thus plainly the "most adequate plaintiff" of the Class within the meaning of the PSLRA.

The only competing movants, Boyd and Kahne, nonetheless contest Rofeh's appointment.  First, Boyd and Kahne argue that Rofeh has significantly overstated his losses, arguing that the majority of his losses were not "directly caused by or related to the disclosure of the fraud" and thus unrecoverable under the loss causation principles articulated in *Dura Pharmaceuticals, Inc. v. Broudo*, 54 U.S. 336 (2005).  Dkt. No. 29 at 6.  Boyd and Kahne claim that, calculated pursuant to a supposedly *Dura*-derived methodology, Rofeh actually incurred only $415,723 in losses—conveniently, slightly less than the $505,092 in losses that Boyd and Kahne claim.  *Id.* at 5.  Second, Boyd and Kahne take issue with the assignments that Rofeh obtained from his family members and related accounts, arguing that these assignments are invalid for lack of consideration and speculating that Rofeh himself may not have incurred any losses, and thus may be subject to unique defenses regarding his standing to pursue claims.  *Id.* at 10-11.

Boyd and Kahne's arguments are unavailing.  First, contrary to their assertion, *Dura* articulated a pleading standard, not an accounting methodology, and courts generally decline to assess financial interest with reference to the principles articulated in *Dura* at this stage of the litigation.  *See*, *e.g.*, *Cook v. Allergan PLC*, 18 Civ. 12089 (CM) *et al.*, 2019 U.S. Dist. LEXIS 51962, at *9 (S.D.N.Y. Mar. 21, 2019) (finding it "unwise to embrace [*Dura*] methodology at the expense of . . . straightforward [LIFO] calculations"

at lead plaintiff appointment stage); *Blitz v. AgFeed Indus.*, 2012 U.S. Dist. LEXIS 49849, at *12 (M.D. Tenn. Apr. 10, 2012).

Second, there is nothing problematic about the assignments obtained by Rofeh. The assignments are not invalid for lack of consideration. "A fundamental tenet of the law of consideration is that '[c]onsideration may consist of a performance or of a return promise.'" *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 253 (2d Cir. 2019) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 71). Here, Rofeh received from the assignors legal title to their claims in this litigation, and the assignors received from Rofeh the assurance that they would not need to litigate these claims themselves, as well as Rofeh's promise to remit any proceeds back to the assignor. *See* Dkt. No. 19-1 2-5. Consideration is thus clearly present. There is nothing invalid or unusual about these assignments, and courts routinely permit lead plaintiff movants to pursue duly assigned claims on behalf of other investors. *See*, *e.g.*, *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2013 WL 6354597, at *3 (N.D. Cal. Dec. 3, 2013); *Aguilar v. Vitamin Shoppe, Inc*., No. 2:17-CV-6454, 2018 WL 1960444, at *6, *7 (D.N.J. Apr. 25, 2018). Finally, contrary to Boyd and Kahne's speculation, Rofeh himself did incur $185,593 in losses in connection with the Defendants' alleged fraud (the accounts designated Account 1 and Account 2 on the damages analysis belongs to Rofeh), giving him ample motivation to vigorously pursue recovery in this litigation even without the claims assigned by his family members. For the sake of clarity, a revised damages chart specifying which of the accounts at issue

belong to Rofeh and which belong to the various assignors is submitted herewith. *See* Reply Declaration of Jennifer Pafiti ("Pafiti Reply Decl."), Ex. A.

Accordingly, Rofeh respectfully submits that his motion should be granted in its entirety and that the competing motions should be denied.

## II.    ARGUMENT

### A.    *Dura* Principles Are Not Applied to Assess Financial Interest at the Lead Plaintiff Appointment Stage

In their reply papers, Boyd and Kahne argue that Rofeh has overstated his losses by including losses that were not caused by the revelation of the Defendants' alleged fraud, asserting that Rofeh's losses are thus at odds with the loss-causation principles articulated in *Dura* and its progeny. *See* Dkt. No. 29 at 6-8. Instead, Boyd and Kahne posit an alternative calculation of Rofeh's losses, which they claim are only $415,723—that is, just slightly lower than Boyd and Kahne's losses.

Yet Boyd and Kahne's reliance on *Dura* at this stage of the litigation is misplaced, because courts generally do ***not*** employ a loss-causation methodology premised on *Dura* principles in assessing financial interest. *See*, *e.g.*, *Allergan*, 2019 U.S. Dist. LEXIS 51962, at *9 (finding it "unwise to embrace [*Dura*] methodology at the expense of . . . straightforward [LIFO] calculations" at lead plaintiff appointment stage); *Plaut v. The Goldman Sachs Group, Inc.*, 18-CV-12084 (VSB), 2019 U.S. Dist. LEXIS 160255, at *12 (S.D.N.Y. Sept. 19, 2019) (when "the complaint alleges multiple partial disclosures over the course of the Class Period, courts have been reluctant to apply a *Dura*-based approach

to calculating losses."); *Blitz*, 2012 U.S. Dist. LEXIS 49859, at *12 (*Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or LIFO losses"); *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, at *14-15 (W.D. Wash. July 13, 2005); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wis. 2009).

*Dura* does not provide an accounting methodology. Rather, the case merely articulates a pleading standard for securities fraud claims alleging violations of Section 10(b) of the Exchange Act—namely, that "a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura*, 544 U.S. at 346. In *Watchguard*, the court expressly declined to look to *Dura* in assessing the financial interest of a Lead Plaintiff movant, explaining its reasoning as follows:

> [The movant's] citation to the discussion of securities class action damages in *Dura . . .* is inapposite. The *Dura* court held that a plaintiff needed to do more than allege the purchase of stock at a fraud-inflated price in order to plead loss causation. The Supreme Court recognized, as does this court, that numerous factors may affect the price of a security. The Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue.

*Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6.

Given that the Complaint in this Action alleges more than one corrective disclosure, calculation of financial interest with reference to the pleading standard articulated in *Dura* is particularly inappropriate at this stage of the litigation. *See*, *e.g.*, *Plaut*, 2019 U.S. Dist.

LEXIS 160255, at *12 (when "the complaint alleges multiple partial disclosures over the course of the Class Period, courts have been reluctant to apply a *Dura*-based approach to calculating losses."). In assessing financial interest for the purposes of Lead Plaintiff appointment, courts routinely consider whether there was "substantial leakage of [defendants'] misconduct prior" to the primary corrective disclosure alleged. *Juliar v. Sunopta Inc.*, 2009 U.S. Dist. LEXIS 58118, at *2 (S.D.N.Y. Jan. 30, 2009). *See also In re Gentiva Sec. Litig.*, 281 F.R.D. 108 (E.D.N.Y. 2012); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471 (S.D.N.Y. 2016) ("a plaintiff['s] theory of 'loss causation may be premised on partial revelations that do not uncover the complete extent of the falsity of specific prior statements' where the partial disclosure 'somehow reveals to the market that a defendant's prior statements were not entirely true.'" (quoting *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008)); *Fialkov v. Celladon Corp.*, 2015 U.S. Dist. LEXIS 192311, at *15 (S.D. Cal. Dec. 9, 2015) (rejecting *Dura* analysis where there were partial corrective disclosures: "At this stage in the proceedings, the Court is inclined to adopt the most expansive view of potential recovery in determining which party has the greatest financial interest for the appointment as lead plaintiff.").

Here, the Complaint alleges that the truth about the efficacy of the Company's HMI-102 product first reached the market via a partial corrective disclosure, in the form of a short-seller report, on July 21, 2020. *See* Dkt. No. 1 ¶¶ 5-6. Only significantly later, on February 18, 2022, is the second and Class Period-ending corrective disclosure alleged to

have occurred.  *Id.* ¶¶ 7-8.  The fraud premium thus varied significantly throughout the Class Period.  Indeed, during the roughly nineteen months that passed between the date of the first corrective disclosure (July 21, 2020) and the second corrective disclosure (February 18, 2022), Homology's stock price fell from $14.77 per share to $2.60 per share—presumably as a result of, *inter alia*, gradual leakage into the market of information regarding the viability of Homology's HMI-102 product.

The Lead Plaintiff ultimately appointed by the Court will file an Amended Complaint, which will be based upon, *inter alia*, an in-depth review of all corrective disclosures and partial corrective disclosures relevant to the subject matter of this litigation.  Accordingly, Boyd and Kahne's advocacy for a *Dura*-derived loss causation methodology at this early stage of the litigation asks the Court to simply "guess about the effect of . . . as-yet-unknown factors in selecting a lead plaintiff",  *Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6—which, again, is **not** the holding of *Dura*.  Rofeh respectfully submits that the Court should decline this invitation and simply assess financial interest in terms of the competing movants' losses calculated on a LIFO basis.

## B.   ROFEH'S ASSIGNMENTS ARE VALID AND ROFEH INDIVIDUALLY INCURRED LOSSES

Boyd and Kahne also assert that the assignments of claims that Rofeh received from his family members and related trusts subject Rofeh to disqualifying unique defenses related to his supposed lack of standing to pursue claims in this litigation.  Boyd and Kahne argue that Rofeh's assignments are invalid under California contract law because "an

assignment needs 'consideration' for it to be valid" and the assignors "assigned their interests to Mr. Rofeh for no 'consideration'". Dkt. No. 29 at 12. Boyd and Kahne also speculate that none of the accounts listed in his Certification (Dkt. No. 19-4) or financial interest analysis (Dkt. No. 19-2) actually belongs to Rofeh himself, as opposed to the assignors. Possessing only purportedly invalid assignments and having no financial interest in this litigation himself, Boyd and Kahne submit that Rofeh will be subject to unique defenses regarding his standing if appointed Lead Plaintiff. Dkt. No. 29 at 13.

Boyd and Kahne are wrong on both counts. First, Boyd and Kahne's assertion that the assignments are void for lack of consideration is at odds with contract law. "A fundamental tenet of the law of consideration is that '[c]onsideration may consist of a performance or of a return promise.'" *Alemayehu*, 934 F.3d at 253 (2d Cir. 2019) (citing Restatement (Second) of Contracts § 71). "There is consideration for a contract if the promisee, being induced by the agreement, does anything legal that he or she is not bound to do." *Id.* Here, consideration is absolutely present in the assignments at issue. Rofeh received from the assignors the right to pursue claims on their behalf in this litigation, and the assignors in turn received from Rofeh the assurance that they would not need to litigate these claims themselves, as well as Rofeh's promise to remit any proceeds back to the assignor. *See* Dkt. No. 19-1 at pp. 2-5. Courts routinely appoint as Lead Plaintiffs movants who have received such assignments. *See*, *e.g.*, *Rieckborn v. Velti PLC*, No. 13-

CV-03889-WHO, 2013 WL 6354597, at *3 (N.D. Cal. Dec. 3, 2013); *Aguilar v. Vitamin Shoppe, Inc.*, No. 2:17-CV-6454, 2018 WL 1960444, at *6, *7 (D.N.J. Apr. 25, 2018).

In any event, Rofeh would have standing even without the assignments because, contrary to Boyd and Kahne's speculation, two of the six accounts at issue belong to Mr. Rofeh. *See* Pafiti Reply Decl., Ex. A. Together, these two accounts incurred losses of approximately $185,593. There is thus no question as to Rofeh's standing to pursue claims in this litigation even without the assignments, and, given the magnitude of theses losses, there is likewise no question as to Rofeh's incentive to vigorously pursue recovery on behalf of the Class.

## III.   CONCLUSION

For the foregoing reasons and for the reasons set forth in his motion and opposition briefs (Dkt. Nos. 18, 30), Rofeh respectfully requests that the Court issue an Order granting his motion in all respects and denying the competing motions.

Dated:  June 17, 2022                            POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

*Counsel for Movant Jason Rofeh and*
*Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Movant Jason Rofeh*

CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/ Jennifer Pafiti
Jennifer Pafiti