Adam M. Apton (SBN 316506)
aapton@zlk.com
LEVI & KORSINSKY, LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel.: (213) 985-7290

Brenda Szydlo (admitted *pro hac vice*)
bszydlo@pomlaw.com
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, NY 10016
Tel.: (212) 661-1100

*Counsel for Plaintiffs and*
*Co-Lead Counsel for the Class*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. PIZZUTO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HOMOLOGY MEDICINES, INC., ARTHUR O. TZIANABOS, W. BRADFORD SMITH, ALBERT SEYMOUR, THERESA MCNEELY, and JOHN DOES 1-10,<br><br>Defendants. | Case No. 2:22-cv-01968-FLA (JPRx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>Date:  October 14, 2022<br>Time:  1:30 p.m.<br>Place:  Courtroom 6B |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ..........................................................................................1

II.   FACTUAL BACKGROUND.......................................................................3

    A.   Homology's Research and Development of HMI-102 at the City of Hope Medical Center in Los Angeles County. ....................................3

    B.   Plaintiffs Filed Suit in Los Angeles County. ......................................4

    C.   In Addition to Plaintiffs and Plaintiffs' Assignors, Numerous Witnesses Reside in this District and Other Parts of California. .........5

III.  LEGAL STANDARD ..................................................................................7

IV.   ARGUMENT................................................................................................8

    A.   Plaintiffs Properly Laid Venue in the Central District of California....8

    B.   The Interests of Justice Weigh Against Transfer. ..............................11

        1.   Plaintiff's Choice of Forum.....................................................12

        2.   Convenience of Parties.............................................................14

        3.   Convenience of Witness and Ease of Access to Evidence..........16

        4.   Location Where the Relevant Agreements Were Negotiated and Executed..................................................................................20

        5.   The Respective Parties' Contacts with the Forum ......................21

        6.   The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum..........................................................................22

        7.   The Differences in the Costs of Litigation.................................22

        8.   The Availability of Compulsory Process....................................23

        9.   Interests of Justice Weigh Heavily Against Transfer..................23

    C.   Defendants Did Not Comply with Local Rule 7-3. ...........................24

V.    CONCLUSION...........................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. v. Childers*,
No. 5:10-cv-03571-JF/HRL, 2011 U.S. Dist. LEXIS 14534 (N.D. Cal. Feb. 14, 2011)...................................................................................................................14

*In re AES Corp. Sec. Litig.*,
240 F. Supp. 2d 557 (E.D. Va. 2003) .......................................................................11

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ....................................................................16

*Alpine 4 Holdings Inc. v. Finn Mgmt. GP LLC*,
No. CV-21-01494-PHX-SPL, 2022 U.S. Dist. LEXIS 73287 (D. Ariz. Apr. 21, 2022).........................................................................................................................8

*Amini Innovation Corp. v. JS Imps., Inc.*,
497 F. Supp. 2d 1093 (C.D. Cal. 2007) ....................................................................14

*Calavo Growers of Cal. v. Belgium*,
632 F.2d 963 (2d Cir. 1980).....................................................................................16

*Caldera v. J.M. Smucker Co.*,
No. 12-cv-4936-GHK (VBKx), 2013 U.S. Dist. LEXIS 183977 (C.D. Cal. June 3, 2013).......................................................................................................................25

*Carty v. Health-Chem Corp.*,
567 F. Supp. 1 (E.D. Pa. 1982) ................................................................................11

*Catholic Order v. U.S. Bancorp Piper Jaffray, Inc.*,
337 F. Supp. 2d 1148 (N.D. Iowa 2004)...................................................................10

*CES Grp., LLC v. DMG Corp.*,
No. 14-cv-02919-BLF, 2015 U.S. Dist. LEXIS 13436 (N.D. Cal. Feb. 3, 2015) ....16

*Chong v. Healthtronics, Inc.*,
No. CV-06-1287 (SJF)(MLO), 2007 U.S. Dist. LEXIS 45956 (E.D.N.Y. June 20, 2007).......................................................................................................................23

*Cochran v. NYP Holdings, Inc.*,
58 F. Supp. 2d 1113 (C.D. Cal. 1998) ......................................................................15

*Cortis, Inc. v. CortiSlim Int'l, Inc.*,
No. 3:12-cv-00562-P, 2012 U.S. Dist. LEXIS 193391 (N.D. Tex. Oct. 16, 2012)..10

*Creative Intellects v. Haygood*,
No. 2:21-cv-02670-RGK-AFM, 2021 U.S. Dist. LEXIS 154578 (C.D. Cal. July 23, 2021).........................................................................................................................8

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986)..................................................................11, 14, 16

*Del Obispo Youth Baseball v. Ambassador Grp. Llc*,
  No. 8:21-cv-00199-JVS-DFMx, 2021 U.S. Dist. LEXIS 190981 (C.D. Cal. June 29,
  2021)........................................................................................................12

*Easyweb Innovations, LLC v. Facebook, Inc.*,
  888 F. Supp. 2d 342 (E.D.N.Y. 2012) ....................................................14

*Ellis v. Costco Wholesale Corp.*,
  372 F. Supp. 2d 530 (N.D. Cal. 2005) ..............................................13, 16

*Fekrat v. United States*,
  No. CV 13-00594 MMM (PJWx), 2013 U.S. Dist. LEXIS 201490 (C.D. Cal. May 6,
  2013)........................................................................................................20

*Gen. Ret. Sys. v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Tr.*,
  No. C 09-1376 SI, 2009 U.S. Dist. LEXIS 130360 (N.D. Cal. July 16, 2009) ..12, 14

*Go-Video, Inc. v. Akai Elec. Co.*,
  885 F.2d 1406 (9th Cir. 1989)..................................................................8

*Hilgeman v. National Insurance Co. of America*,
  547 F.2d 298 (5th Cir. 1977)....................................................................9

*Jones v. GNC Franchising, Inc.,*
  211 F.3d 495 (9th Cir. 2000)..............................................................12, 23

*Lather, Inc. v. Gilchrist & Soames, Inc.*,
  No. 2:19-cv-05868-ODW (SSx), 2020 U.S. Dist. LEXIS 40442 (C.D. Cal. Mar. 9,
  2020)........................................................................................................17

*Leroy v. Great Western United Corp.*,
  443 U.S. 173 (1979) ................................................................................8

*In re Merit Med. Sys. Sec. Litig.*,
  No. SA CV 19-02326-DOC-ADS, 2020 U.S. Dist. LEXIS 89964 (C.D. Cal. May 11,
  2020)....................................................................................................17, 19

*Morgan v. McMillin,*
  No. 2:20-cv-07774-FLA (AFMx), 2021 U.S. Dist. LEXIS 232931 (C.D. Cal. July 7,
  2021)........................................................................................................25

*NFF Inventions LLC v. CTI Food Acquisition LLC*,
  No. CV-12-2778-MWF (JEMx), 2012 U.S. Dist. LEXIS 196511 (C.D. Cal. July 3,
  2012)........................................................................................................16

*Rhinesmith v. Tradewinds Bev. Co.*,
  No. 16-cv-9249-PSG (MRWx), 2018 U.S. Dist. LEXIS 1876 (C.D. Cal. Jan. 4, 2018) ................................................................................................................25

*Robles v. Gojo Indus.*,
  No. SACV 21-928 JVS (DFMx), 2021 U.S. Dist. LEXIS 246874 (C.D. Cal. Aug. 26, 2021)......................................................................................11, 12, 16, 22

*Roling v. E\*Trade Sec., LLC*,
  756 F. Supp. 2d 1179 (N.D. Cal. 2010) ..................................................................13

*Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*,
  No. CV 17-4977 PSG (SKx), 2018 U.S. Dist. LEXIS 225817 (C.D. Cal. Jan. 9, 2018) ................................................................................................................15

*SEC v. Hui Feng & Law Offices of Hui Feng & Assocs. P.C.*,
  No. CV 15-9420-CBM-SSx, 2016 U.S. Dist. LEXIS 186323 (C.D. Cal. Apr. 7, 2016) ................................................................................................................10

*SEC v. Rose Fund, LLC*,
  No. C 03-04593 WHA, 2004 U.S. Dist. LEXIS 22491 (N.D. Cal. Jan. 9, 2004) ....14

*Sec. Inv'r Prot. Corp. v. Vigman*,
  764 F.2d 1309 (9th Cir. 1985)..........................................................................8, 9, 14

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970)......................................................................................11

*Simpson Strong-Tie Co. v. Oz-Post Int'l, LLC*,
  No. 3:18-cv-01188-WHO, 2018 U.S. Dist. LEXIS 140158 (N.D. Cal. Aug. 17, 2018) ................................................................................................................20

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015)20

*Thrive Nat. Care v. Le Vel Brands*,
  No. SA CV 21-2022-DOC-KES, 2021 U.S. Dist. LEXIS 117630 (C.D. Cal. Apr. 28, 2021)........................................................................................................11

*Travis v. Anthes Imperial, Ltd.*,
  473 F.2d 515 (8th Cir. 1973)...................................................................................10

*In re Triton Ltd. Sec. Litig.*,
  70 F. Supp. 2d 678 (E.D. Tex. 1999) ......................................................................11

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ................................................................................................14

*Wright v. Bloom*,
   No. C 12-00746 WHA, 2012 U.S. Dist. LEXIS 144701 (N.D. Cal. Oct. 5, 2012)..10

*Yeti Data, Inc. v. Snowflake, Inc.*,
   No. CV 20-6595 PA (AFMx), 2020 U.S. Dist. LEXIS 247752 (C.D. Cal. Nov. 9, 2020)................................................................................................................11

*Zorn v. Anderson*,
   263 F. Supp. 745 (S.D.N.Y. 1966)...........................................................................11

**Statutes**

15 U.S.C. §78aa .........................................................................................1, 8, 14

28 U.S.C. §1391 ..................................................................................................1

28 U.S.C. §1404 .........................................................................................11, 12

**Other Authorities**

15 Wright, Miller & Cooper, Fed Practice & Proc. §3851 (4th ed. 2021) ..................17

**Rules**

FED. R. CIV. P. 45 ................................................................................................23

## I.    INTRODUCTION

Plaintiffs are suing Defendants in this District for good reason. The operative complaint alleges that Defendants committed federal securities fraud by making materially misleading statements about Homology Medicine, Inc.'s lead drug candidate and clinical trial data. Although Defendants may be based in Massachusetts, Homology created, developed, researched and tested the drug in this District. Further, Homology's ability to commercialize the drug is subject to licensing agreements with research institutions in this District that explicitly identify this District as the selected forum for all related litigation. Numerous witnesses with relevant information to Plaintiffs' claims also reside and work within and around this District, thereby making them "unavailable" if the case were transferred. As if this were not enough to defeat Defendants' motion, two of the four named Plaintiffs also live in this District and due to their personal circumstances would likely be unable to continue the litigation if forced to litigate across the country. Despite Defendants' arguments to the contrary, they do not prove that venue has been improperly laid in this District or that the interests of justice weigh in favor of transfer. Defendants' motion should be denied.

Venue in this action is governed by the liberal standard set forth in Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. §78aa(a). By enacting this statute, Congress intended to provide plaintiffs with the right to litigate in the forum of their choosing. Unlike the venue provisions under 28 U.S.C. §1391, venue exists under Section 27 of the Exchange Act wherever a defendant transacts business or acts in furtherance of the alleged fraudulent scheme. Venue properly exists in this District because Defendants transacted business here by developing and testing the drug that lies at the heart of this securities fraud action, HMI-102. Defendants' statements about HMI-102 are the subject of the alleged false and materially misleading statements at bar. These statements were disseminated by Defendants to Plaintiffs in this District. Defendants cannot credibly dispute that venue exists under Section 27 of the Exchange Act.

Nor can Defendants credibly argue that the interests of justice compel the transferring of this action across the country to the District of Massachusetts. Plaintiffs Michael C. Pizzuto and Jason Rofeh, as well as Mr. Rofeh's family members who assigned their claims and appointed Mr. Rofeh as their attorney-in-fact, live in Los Angeles County. As explained in their respective declarations, the circumstances surrounding their day-to-day jobs effectively preclude them from actively participating in this lawsuit if it were transferred outside of this District. Further, as Plaintiffs demonstrate, several current and former Homology employees who appear to have highly relevant information to the claims at bar also reside in and around this District.

Conversely, Defendants fail to provide any evidence showing that they would be inconvenienced if forced to litigate in this District, especially considering the fact that they consented to this District in Homology's licensing agreements for HMI-102. They also do not specify the costs or prejudice they would incur if required to travel to California, or otherwise explain why they would be unable to provide Plaintiffs with access to documents if the case remains in this District. Defendants also fail to identify any non-party witnesses that would be inconvenienced or otherwise be unavailable if the litigation remains in Los Angeles. Defendants have failed to carry their burden on the motion when considering the prejudice and inconvenience that Plaintiffs and their non-party witnesses would face if the case were transferred.

Defendants have not previously heard Plaintiffs' arguments in opposition to the motion. Had there been a proper meet-and-confer as required by Local Rule 7-3, Plaintiffs would have explained why venue was properly laid in this District and Defendants would have potentially realized that the instant motion was futile and avoided the unnecessary burden and expense it has already caused. Thus, independent from Plaintiffs' venue arguments, Defendants' motion should also be denied for failing to comply with Local Rule 7-3.

## II.    FACTUAL BACKGROUND

### A.    Homology's Research and Development of HMI-102 at the City of Hope Medical Center in Los Angeles County.

This case centers on Defendants' statements about Homology's lead drug candidate, HMI-102, and the results of the "pheNIX" clinical trial. HMI-102 and the pheNIX trial marked a break from traditional gene therapies on the market; instead of using CRISPR technology, HMI-102 relied on "adeno-associated virus vectors" or "AAVHSCs". ¶¶41-42.[1] AAVHSCs represented a significant technological breakthrough because, unlike CRISPR, AAVHSCs did not break patient DNA strands when used during the course of treatment. ¶42. Thus, drugs that utilized AAVHSCs, like HMI-102, were potentially safer and more effective than existing genetic therapeutics. ¶42.

Homology's co-founder, Dr. Saswati Chatterjee, created the AAVHSCs technology for HMI-102 in her research lab at the City of Hope Medical Center in Duarte, Los Angeles County, California. ¶¶17, 35. Since then, Homology, the City of Hope Medical Center, and the California Institute of Technology have been jointly involved in the development and testing of HMI-102, including and through the pheNIX trial. In fact, HMI-102 is subject to exclusive patent licensing agreements between Homology, the City of Hope Medical Center, and the California Institute of Technology. ¶¶18-19, 36-37. These licensing agreements require Homology to provide to the City of Hope Medical Center and the California Institute of Technology records relating to HMI-102's development and commercialization. ¶19. Homology also consented to jurisdiction within this District in the licensing agreements. ¶19.

On June 10, 2019, Homology launched the pheNIX trial for HMI-102. ¶49. The study sought to measure the safety and efficacy of HMI-102 at varying doses. ¶50. Homology had several recruitment sites for the study, including two within Los Angeles

---

[1] Citations to "¶__" refer to the Amended Class Action Complaint for Violations of the Federal Securities Laws dated August 15, 2022, ECF No. 46.

County. These test sites were separate and apart from Dr. Chatterjee's research lab at the City of Hope Medical Center. The pheNIX test sites were the Kaiser Permanente Los Angeles Medical Center and the Children's Hospital of Orange County, both of which are located within this District (*i.e.*, Los Angeles County and Orange County). Declaration of Adam M. Apton dated September 16, 2022 ("Apton Decl."), ¶4.

Plaintiffs allege that Defendants misrepresented the results of the pheNIX trial and claimed that HMI-102 was safer and more effective than it truly was. Thus, the success of Plaintiffs' claims depends on what Defendants knew about HMI-102's efficacy and safety at the time of the alleged false statements, as evidenced by the efficacy and safety data from Dr. Chatterjee's research at the City of Hope Medical Center and Defendants' communications about the pheNIX data with the City of Hope Medical Center and the California Institute of Technology.

**B.      Plaintiffs Filed Suit in Los Angeles County.**

Plaintiff Michael C. Pizzuto commenced this lawsuit. Declaration of Michael C. Pizzuto dated September 12, 2022 ("Pizzuto Decl."), ¶3. Mr. Pizzuto lives and works in Los Angeles County. *Id*. While in Los Angeles County, Mr. Pizzuto purchased Homology stock. *Id*. at ¶2. As a professional actor, his livelihood is dependent upon his ability to attend casting calls and productions on short notice. *Id*. at ¶7. While Mr. Pizzuto could have filed this lawsuit elsewhere, he elected to file it in this District due to his travel limitations. Mr. Pizzuto remains a named plaintiff in this action and intends to participate in its prosecution going forward. *Id*. at ¶¶4-7.

Lead Plaintiff Jason Rofeh also lives and works in Los Angeles County. Declaration of Jason Rofeh dated September 16, 2022 ("Rofeh Decl."), ¶¶3-4, 6. Similar to Mr. Pizzuto, Mr. Rofeh purchased Homology stock while in Los Angeles County. *Id*. at ¶3. Further, Mr. Rofeh's employment restricts his ability to travel and, in turn, participate in this litigation if it were transferred outside of this District. *Id*. at ¶¶4, 5. Mr. Rofeh owns and operates a small art gallery that requires him to be present during normal working hours and, on occasion, outside of normal working hours. *Id*. at ¶4. When Mr. Rofeh

sought appointment as lead plaintiff, he believed that the lawsuit would stay in this District and that he would therefore be able to prosecute it. His ability to do so would be impeded if the case is transferred. *Id.* at ¶7.

Mr. Rofeh is prosecuting claims individually and on behalf of several of his family members who assigned their claims to Mr. Rofeh and appointed him as their lawful attorney-in-fact. *Id.* at ¶2. Each of these family members lives in Los Angeles County and they, too, purchased Homology stock while in Los Angeles County. Further, although Mr. Rofeh is representing the interests of these family members, they still will be required to participate in discovery. Their ability to do so, however, would be impeded if this case were transferred outside of this District due to the nature of their day-to-day job responsibilities; specifically, Michelle Rofeh-Lensky, who assigned her individual claims as well as the claims belonging to the Mark Rofeh Trust, lives and works in Los Angeles County. Declaration of Michelle Rofeh-Lensky dated September 16, 2022 ("Rofeh-Lensky Decl."), ¶¶5-7. As a caretaker of her two minor children and employed as a full-time attorney, she will be prevented from participating in the litigation if required to travel out-of-state. *Id.* at ¶6.

**C.    In Addition to Plaintiffs and Plaintiffs' Assignors, Numerous Witnesses Reside in this District and Other Parts of California.**

Several of Homology's current and former employees with information relevant to this lawsuit reside in Los Angeles County. Dr. Saswati Chatterjee, as discussed above, is one of Homology's co-founders and the creator of the AAVHSCs technology underlying HMI-102. Dr. Chatterjee works and/or resides in Los Angeles County. ¶35. Her work in connection with HMI-102 was conducted at her research lab in Los Angeles County at the City of Hope Medical Center. ¶17. In addition to Dr. Chatterjee, Drs. Olivia Bravo and Harriet Chang oversaw the pheNIX trial at the Kaiser Permanente Los Angeles Medical Center and Children's Hospital of Orange County within this District (*i.e.*, Los Angeles County and Orange County, respectively). Apton Decl. at ¶4.

Other witnesses within this District and California are:

5

1)      Victor Zhivich. Mr. Zhivich served as Homology's Senior Research Associate from May 2018 through September 2021. His job responsibilities included supervising and reporting research to Homology's executive management. Mr. Zhivich resides in Los Angeles County and is likely to have relevant information relating to HMI-102 and the pheNIX trial. Declaration of Jaclyn Cahill dated September 16, 2022 ("Cahill Decl."), ¶4(c);

2)      Laura Adamson. Ms. Adamson served as Homology's Director of Upstream Process Development from July 2018 through January 2020 and as an Upstream Process Development Lead from January 2017 through June 2018. Ms. Adamson was responsible for Homology's upstream process development, which refers to the process for developing a drug candidate for internal pre-clinical and clinical testing purposes. Ms. Adamson resides in Los Angeles County and is likely to have relevant information concerning Homology's internal discussions about HMI-102's development for the pheNIX trial. *Id*. at ¶4(b);

3)      Stephanie Kareht, Ph.D. Dr. Kareht has been Homology's Senior Director of Medical Writing since January 2022, which coincides almost precisely with the FDA's issuance of its clinical hold on the pheNIX trial the following month in February 2022. As Senior Director of Medical Writing, Dr. Kareht was likely integral in Homology's efforts to lift the clinical hold and consequently would have direct knowledge about Homology's efforts to revise the pheNIX study protocol in response to the FDA's health and safety concerns. Dr. Kareht resides in San Francisco, California. *Id*. at ¶4(d);

4)      Matthew Patterson. Mr. Patterson has been a member of Homology's Board of Directors and Audit Committee since January 2018. According to Homology, Mr. Patterson has extensive experience in the biopharmaceutical industry based on his previous employment at other drug companies. Based on his past experience, Mr. Patterson likely has firsthand knowledge of the pheNIX data and can confirm when the named defendants first learned that HMI-102 was more dangerous and less effective than represented. Further, by virtue of his role on the Audit Committee, Mr. Patterson also will

likely know what efforts were undertaken by Homology to downplay the fallout caused by "Patient 5" in the pheNIX study, given that the Audit Committee was tasked with "coordinat[ing] the Board's oversight of the Company's internal control over financial reporting, disclosure controls and procedures and code of conduct." Apton Decl. at ¶5 & Exhibit B. Mr. Patterson resides in San Francisco, California. Cahill Decl. at ¶4(e);

5)    Janet Iles, M.D., M.P.H. Dr. Iles was Homology's Vice President of Clinical Development from May 2020 through September 2021. In this role, Dr. Iles likely had direct responsibility for the pheNIX trial, given that the pheNIX trial was Homology's first and only clinical trial for the company's lead drug candidate, HMI-102. Accordingly, Dr. Iles likely has highly relevant information to the safety and efficacy data that Defendants omitted from their public statements and can pinpoint when such information was known and who knew it. Dr. Iles resides in San Francisco, California. *Id*. at ¶4(h);

6)    Cecilia Fairley. Ms. Fairley is Homology's Regional Medical Affairs Director. As a director of medical affairs, Ms. Fairley likely oversaw the development of HMI-102 and the pheNIX trial. She therefore almost certainly has highly relevant information bearing on Plaintiffs' claims. Ms. Fairley resides in San Francisco, California. *Id*. at ¶4(f);

7)    BTIG, LLC. Homology retained BTIG to underwrite its April 2021 follow-on offering. Apton Decl. at ¶6. BTIG's San Francisco office provided the underwriting services in connection with the offering. *See id*. & Exhibit C. BTIG conducted due diligence into Homology's business operations and representations, including Homology's representations concerning the pheNIX clinical trial and HMI-102. As alleged, Defendants used this offering to raise funds while in possession of materially adverse information. Thus, BTIG will have relevant and material information about the pheNIX trial at a critically important point in the Class Period.

## III.    LEGAL STANDARD

Section 27 of the Exchange Act is controlling. It states that for any violation of the Exchange Act, venue exists in "any such district or in the district wherein the defendant is

7

found or is an inhabitant or transacts business . . . ." 15 U.S.C. §78aa(a). "Without question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum . . . and unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) (internal quotations and citations omitted); *see also Leroy v. Great Western United Corp.*, 443 U.S. 173, 188 (1979) (noting "the underlying policy of § 27 to confer venue in a wide variety of districts in order to ease the task of enforcement of federal securities law"); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1409 (9th Cir. 1989) (holding that Congress enacted federal venue statutes to give plaintiffs broader ability to bring suit in venue of their choosing); *Alpine 4 Holdings Inc. v. Finn Mgmt. GP LLC*, No. CV-21-01494-PHX-SPL, 2022 U.S. Dist. LEXIS 73287, at *15-16 (D. Ariz. Apr. 21, 2022) ("The result is unusual—effectively allowing for nationwide personal jurisdiction and venue when the defendants in securities fraud cases are American entities—but it is the result that necessarily follows from the text of § 27 of the Act, 28 U.S.C.§ 1391, and the *Go-Video* case.").

## IV.    ARGUMENT

### A.    Plaintiffs Properly Laid Venue in the Central District of California.

Courts broadly interpret the Exchange Act's venue provision under 15 U.S.C. §78aa(a). Indeed, Section 27 allows venue in any district where: (a) the defendant transacts business; (b) the defendant is found or is an inhabitant; or (c) any act or transaction constituting a violation has occurred. *See Vigman*, 764 F.2d at 1316. This is a relatively low threshold. *See Creative Intellects v. Haygood*, No. 2:21-cv-02670-RGK-AFM, 2021 U.S. Dist. LEXIS 154578, at *12 n.4 (C.D. Cal. July 23, 2021) ("Since venue is proper under the more stringent standard of 1391(b)(2), the Court need not address whether venue is proper under the more liberal standard of 15 U.S.C. § 78aa for Plaintiffs' federal securities fraud claim."). Venue under the Exchange Act does not require "actual contacts with the forum" or that the defendants "performed any acts within the forum in violation

8

of the Act." *Vigman*, 764 F.2d at 1317. "***[T]he 'act' contemplated by the statute need not be crucial, nor must the fraudulent scheme be hatched in the forum district***." *Id.* (quoting *Hilgeman v. National Insurance Co. of America*, 547 F.2d 298, 301 (5th Cir. 1977) (emphasis added)).

There are more than enough facts at hand to properly establish venue under Section 27 of the Exchange Act. For starters, Homology transacts business in this District and, specifically, Los Angeles County. Dr. Chatterjee, Homology's co-founder, developed the delivery agent used for HMI-102, *i.e.*, the AAVHSCs technology. This technology was what separated HMI-102 from other gene therapeutics on the market and differentiated Homology from other biopharmaceutical investments. Thus, Homology's creation of HMI-102 itself, which indisputably lies at the center of this case, occurred at the City of Hope Medical Center in Los Angeles County. Further, Homology's right to research, develop, and ultimately commercialize HMI-102 depends entirely on the existence of its current licensing agreements with the City of Hope Medical Center as well as the California Institute of Technology. ¶¶17-19, 35-37.

Homology also tested HMI-102 in this District. Homology's pheNIX trial was the company's first and only clinical trial for HMI-102. The pheNIX trial had not one, but two testing sites within this District. These testing sites were the Kaiser Permanente Los Angeles Medical Center and the Children's Hospital of Orange County located in Los Angeles County and Orange County, respectively. Apton Decl. at ¶4. As alleged, Defendants materially misrepresented HMI-102's safety and efficacy, as evidenced by the pheNIX data that existed at the time. Thus, the pheNIX data, including the data from these sites, is integral to Plaintiffs' claims.

The case law on this point demonstrates that these connections are more than sufficient for the purposes of laying venue in this District. As stated above, "the 'act' contemplated by [Section 27 of the Exchange Act] need not be crucial, nor must the fraudulent scheme be hatched in the forum district." *Vigman*, 764 F.2d at 1317. In *Vigman*, the Ninth Circuit adopted the Fifth Circuit's relatively low threshold for what constitutes

a sufficient "act" to establish venue under Section 27. *See Cortis, Inc. v. CortiSlim Int'l, Inc.*, No. 3:12-cv-00562-P, 2012 U.S. Dist. LEXIS 193391, at *8-10 (N.D. Tex. Oct. 16, 2012) (collecting cases illustrating examples of sufficient "act[s]" for establishing venue under Section 27); *see also SEC v. Hui Feng & Law Offices of Hui Feng & Assocs. P.C.*, No. CV 15-9420-CBM-SSx, 2016 U.S. Dist. LEXIS 186323, at *6 (C.D. Cal. Apr. 7, 2016) (Section 27 venue established where "the evidence before the Court demonstrates that Defendants did business in this district . . . and New York . . . , and that some of the alleged victims of Defendants' fraud are located in this district . . . and New York"); *Wright v. Bloom*, No. C 12-00746 WHA, 2012 U.S. Dist. LEXIS 144701, at *7 (N.D. Cal. Oct. 5, 2012) (venue proper where defendants "exchanged proposed agreements and other documents with plaintiffs in California that formed the basis of the alleged securities violations" and "sent numerous emails to plaintiffs . . . forming the basis for the alleged securities fraud").

The crux of Homology's business operations was at all relevant times based on its transactions within this District. HMI-102 was Homology's lead drug candidate. Homology developed HMI-102 within this very District with Dr. Chatterjee, Homology's co-founder, who lives and works within this District at the City of Hope Medical Center in Los Angeles County. Homology then negotiated and executed licensing agreements with both the City of Hope Medical Center and the California Institute of Technology, also located in Los Angeles County, to study and potentially commercialize HMI-102. Homology also conducted its clinical testing in this District at the Kaiser Permanente Los Angeles Medical Center and the Children's Hospital of Orange County. Thus, by virtue of these facts, Defendants have "reach[ed] into" this District and provided a credible basis for laying venue. *See Cortis, Inc.*, 2012 U.S. Dist. LEXIS 193391, at *10-11.

Defendants also transmitted their misleading statements into this forum where Plaintiffs live and who then, in turn, purchased Homology securities. Thus, both Defendants *and* Plaintiffs are connected to this District for the purposes of laying venue. *See Catholic Order v. U.S. Bancorp Piper Jaffray, Inc.*, 337 F. Supp. 2d 1148, 1157 (N.D.

Iowa 2004) (venue proper where "'consequences of the [defendant's] actions were felt'") (quoting *Travis v. Anthes Imperial, Ltd.*, 473 F.2d 515, 529 (8th Cir. 1973)); *In re AES Corp. Sec. Litig.*, 240 F. Supp. 2d 557, 561-62 (E.D. Va. 2003) (venue is proper under the Exchange Act when the plaintiff alleges that "the allegedly false or misleading information was transmitted into" the venue); *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 686-87 (E.D. Tex. 1999) (finding venue was proper where "the evidence presented by the Plaintiffs establishe[d] that information regarding the desirability of owning Triton's stock did enter the [forum district] and was relied upon by persons in the [forum district]"); *Carty v. Health-Chem Corp.*, 567 F. Supp. 1, 2 (E.D. Pa. 1982) (holding that venue was proper in a securities class action where the plaintiffs alleged that they had received the defendant's annual and quarterly reports in the forum district); *Zorn v. Anderson*, 263 F. Supp. 745, 748 (S.D.N.Y. 1966) ("Proxies sent into this district by interstate mail, with the alleged purpose of securing approval of the contracts, are adequate to sustain venue").

## B. The Interests of Justice Weigh Against Transfer.

Defendants also invoke the transfer provisions of 28 U.S.C. §1404(a). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *accord Robles v. Gojo Indus.*, No. SACV 21-928 JVS (DFMx), 2021 U.S. Dist. LEXIS 246874, at *16 (C.D. Cal. Aug. 26, 2021) ("the burden is on the moving party to show that transfer is appropriate"); *Thrive Nat. Care v. Le Vel Brands*, No. SA CV 21-2022-DOC-KES, 2021 U.S. Dist. LEXIS 117630, at *10-11 (C.D. Cal. Apr. 28, 2021). A "transfer is inappropriate when it merely serves to shift inconveniences from one party to the other." *Yeti Data, Inc. v. Snowflake, Inc.*, No. CV 20-6595 PA (AFMx), 2020 U.S. Dist. LEXIS 247752, at *3 (C.D. Cal. Nov. 9, 2020) (citing *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989)); *see also Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970) ("The decision to transfer is in the court's discretion, but . . . not to be liberally granted").

11

Courts within the Ninth Circuit decide transfer motions under 28 U.S.C. §1404(a) on an "'individualized, case-by-case consideration of convenience and fairness.'" *Del Obispo Youth Baseball v. Ambassador Grp. Llc*, No. 8:21-cv-00199-JVS-DFMx, 2021 U.S. Dist. LEXIS 190981, at *15 (C.D. Cal. June 29, 2021) (quoting *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000)). To conduct this analysis, courts consider the following factors:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99. Pursuant to *Jones v. GNC Franchising, Inc.*, transfer is not warranted unless the moving party has demonstrated that "the facts as a whole" with all inferences drawn in favor of the nonmoving party, weigh in favor of it. *See*, *e.g.*, *Robles*, 2021 U.S. Dist. LEXIS 246874, at *15 (denying transfer where majority of *Jones* factors "disfavor[ed] transfer or [were] neutral").

### 1.    Plaintiff's Choice of Forum

Plaintiffs' choice of forum should not be disturbed because they selected this District for legitimate reasons. *See Gen. Ret. Sys. v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Tr.*, No. C 09-1376 SI, 2009 U.S. Dist. LEXIS 130360, at *19-22 (N.D. Cal. July 16, 2009) (plaintiffs' choice of forum given "considerable deference" where events giving rise to the claim occurred in the district, stating "[t]hat substantial relevant activity occurred elsewhere does not obviate this deference"). Plaintiff Michael Pizzuto, who commenced this action, both resides and works within this District and cannot reasonably travel outside of it due to the fact that he is required to be physically present and available for his employment. Pizzuto Decl. at ¶¶3, 5-7. Mr. Pizzuto is still a named plaintiff (even if not a "lead plaintiff") in the action and has every intention of remaining actively

12

involved in the litigation. *Id*. at ¶4. If, however, the action is transferred across the country, Mr. Pizzuto's ability to participate in the lawsuit would be severely impeded. *Id*. at ¶7.

Similarly, Lead Plaintiff Jason Rofeh and his family members also live in this District. Rofeh Decl. at ¶6; Rofeh-Lensky Decl. at ¶7.[2] Mr. Rofeh, in particular, is serving as a lead plaintiff in part due to the fact that the action has been venued in this District, which would allow him to participate in the litigation without interfering with his day-to-day employment. Rofeh Decl. at ¶¶4-7. If this action is transferred, neither he nor his family members will be able to actively participate in this litigation, thereby giving Defendants a significant unfair tactical advantage. *Id*. at ¶¶4-7; Rofeh-Lensky Decl. at ¶6. Thus, while Defendants argue that a transfer of venue would create only a small inconvenience for Plaintiffs, in truth, it potentially precludes them from participating in this lawsuit. Comparatively, Defendants will not be faced with the draconian consequence of losing their livelihoods if they are required to continue litigating this case in the current District.

Plaintiffs have legitimate connections to this District and even more legitimate reasons for wanting to keep the action here. Thus, because "there is no evidence that plaintiffs engaged in forum shopping and both plaintiffs and defendant have significant contacts with the [Central] District of California, plaintiffs' choice of forum carries significant weight." *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1186 (N.D. Cal. 2010) (denying transfer of class action lawsuit). Further, Defendants are wrong to suggest that Plaintiffs' choice of forum is entitled to minimal deference. Defs. Mot. at 9. When "venue is governed by a more permissive standard, a plaintiff's choice is entitled to greater deference as a matter of law, even where that case is brought as a class action." *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005) (in class action, favorably comparing the more permissive venue standard of the federal securities laws

---

[2] Defendants erroneously argue that none of the Lead Plaintiffs live in this District. Defs. Mot. at 10. Even if not alleged in the Complaint, Mr. Rofeh's residence was entered into the record during the lead plaintiff proceedings. *See* ECF No. 19-5 at ¶2.

with the liberal venue standard of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq.).

To be sure, "under Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight . . . and courts generally will not transfer an action unless the convenience and justice factors ***strongly favor*** venue elsewhere." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1110 (C.D. Cal. 2007) (emphasis added). This deference is heightened in cases brought under the Exchange Act, which Congress intended by providing plaintiffs with the right to choose their forum. *See* 15 U.S.C. §78aa(a). In fact, the Ninth Circuit recognizes that, "[w]ithout question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum and unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should ***rarely be disturbed***." *Vigman*, 764 F.2d at 1317 (emphasis added); *see Wells Fargo*, 2009 U.S. Dist. LEXIS 130360, at \*19-20 (N.D. Cal. July 16, 2009) (holding in class action case that federal securities laws require "considerable deference . . . to plaintiffs' choice of forum"); *SEC v. Rose Fund, LLC*, No. C 03-04593 WHA, 2004 U.S. Dist. LEXIS 22491, at \*4 (N.D. Cal. Jan. 9, 2004) ("The general rule [that plaintiff's forum choice is afforded substantial weight] applies even more so here where Congress has enacted a special venue provision for actions under the federal securities laws.").

### 2.    Convenience of Parties

"Section 1404(a) provides for transfer to a more convenient forum, 'not to a forum likely to prove equally convenient or inconvenient,' *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964), and transfer should not be granted if the effect is simply to shift the inconvenience to the plaintiff, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)." *Adobe Sys. v. Childers*, No. 5:10-cv-03571-JF/HRL, 2011 U.S. Dist. LEXIS 14534, at \*25 (N.D. Cal. Feb. 14, 2011). "Where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed." *See Easyweb Innovations, LLC v.*

14

*Facebook, Inc.*, 888 F. Supp. 2d 342, 352 (E.D.N.Y. 2012) (internal quotation marks omitted).

In this case, Homology was incorporated in the state of Delaware and maintains a principal executive office in Bedford, Massachusetts. While these locations are outside of this District, and given that Homology was not inconvenienced in availing itself of the benefits of transacting business within this District, Homology cannot now claim an inconvenience in having to litigate claims in the very same District. Homology is a national corporation with over two hundred employees and more than $100 million in cash and cash equivalents (as of Dec. 31, 2021). Apton Decl. at ¶7. Homology certainly has the financial means, resources, and flexibility to litigate this case in the current venue.

In contrast, Messrs. Pizzuto and Rofeh are private individuals who both work and reside in Los Angeles County. As previously discussed, given the nature of their work, they do not have the flexibility to work remotely or dictate the schedule of their day-to-day hours. Their past and present active participation in this litigation is due in part to the fact that it is venued in this District. They do not have the ability to travel to the District of Massachusetts for this litigation without substantially risking their livelihoods. A transfer would directly jeopardize their participation. Accordingly, for Defendants, litigating this case in the current venue would not cause financial loss or harm, which would be all but certain for Messrs. Pizzuto and Rofeh if the case were transferred.

Defendants overlook this reality in favor of the fact that Homology is headquartered in Massachusetts. Defs. Mot. at 5. However, Defendants do not prove or otherwise explain how the location of Homology's headquarters equates to an inconvenience sufficient to justify transferring this action. *See Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, No. CV 17-4977 PSG (SKx), 2018 U.S. Dist. LEXIS 225817, at *8-9 (C.D. Cal. Jan. 9, 2018) (party seeking transfer "must demonstrate through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include," and "describe in concrete terms how those parties would be inconvenienced by litigating in the forum"); *accord Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113,

15

1119 (C.D. Cal. 1998) ("defendants do not even attempt to satisfy with the requisite specificity their heavy burden of showing that a transfer is preferable"). Defendants merely assert, without factual support, that the Defendants reside in or around Massachusetts and would be inconvenienced if the litigation remained in this District. *See Decker Coal Co.*, 805 F. 2d at 843 (holding defendant has burden to "make a strong showing of inconvenience to warrant upsetting the plaintiffs choice of forum"); *Calavo Growers of Cal. v. Belgium*, 632 F.2d 963, 969 (2d Cir. 1980) ("A forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel . . . Jet travel and satellite communications have significantly altered the meaning of 'non conveniens'").[3]

### 3. Convenience of Witness and Ease of Access to Evidence

"Transfer is inappropriate where it 'would merely shift rather than eliminate the inconvenience.'" *Ellis*, 472 F. Supp. 2d at 1195 (quoting *Decker Coal,* 805 F.2d at 843). Courts give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur. *Allstar Mktg. Grp., LLC v. Your Store Online, LLC,* 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009) (collecting cases). "When analyzing convenience, primary consideration is given to third part[ies], as opposed to employee witnesses. In addition, litigation related travel is less burdensome on large corporations than on individual parties to an action." *Robles*, 2021 U.S. Dist. LEXIS 246874, at \*11 (internal quotations and citations omitted); *CES Grp., LLC v. DMG Corp.*, No. 14-cv-02919-BLF, 2015 U.S. Dist. LEXIS 13436, at \*11-12 (N.D. Cal. Feb. 3, 2015)

---

[3] Plaintiffs are also willing to depose Defendants and Defendants' employees in Massachusetts, removing any potential inconveniences. *See NFF Inventions LLC v. CTI Food Acquisition LLC*, No. CV-12-2778-MWF (JEMx), 2012 U.S. Dist. LEXIS 196511, at \*2-3 (C.D. Cal. July 3, 2012) (transfer denied as plaintiff "has displayed a willingness to work with CTI to schedule interviews and depositions in [the proposed transferor district in] Texas" and "Defendants' witnesses will be deposed near their work locations"). Had Defendants adhered to Local Rule 7-3, as discussed below, Plaintiffs would have communicated this and perhaps avoided the need for this motion.

(defendants' "generalized assertions fail[ed] to counter Plaintiff's more particularized showing that transfer would not be significantly more convenient for certain party witnesses and would in fact inconvenience key non-party witnesses"). It is Defendants' burden to show that convenience of the witnesses weighs heavily in favor of transfer. *See In re Merit Med. Sys. Sec. Litig.*, No. SA CV 19-02326-DOC-ADS, 2020 U.S. Dist. LEXIS 89964, at *11 (C.D. Cal. May 11, 2020).

"In determining whether this factor favors transfer, the Court must consider the location and number of witnesses each side has and the relative importance of those witnesses." *Lather, Inc. v. Gilchrist & Soames, Inc.*, No. 2:19-cv-05868-ODW (SSx), 2020 U.S. Dist. LEXIS 40442, at *8 (C.D. Cal. Mar. 9, 2020); 15 Wright, Miller & Cooper, Fed Practice & Proc. §3851 (4th ed. 2021) (a "party seeking the transfer must identify, typically by affidavit, the key witnesses to be called, state their residence, and provide at least a general summary of what their testimony will cover"). Defendants do not meet this basic evidentiary threshold; instead, they support their motion with a declaration from Homology's Chief Legal Officer, Paul Alloway, who is not a named defendant. Mr. Alloway purports to state where each named defendant lives but does not identify any of Defendants' other witnesses let alone describe their anticipated testimony. *See* ECF No. 53-1 at ¶¶6-7. Thus, either Defendants have no intention of relying on non-party witnesses or, alternatively, their motion is factually unsupported.

To the contrary, Plaintiffs have discovered that many relevant non-party witnesses reside in California and, specifically, within in this District.[4] The following is a list of relevant non-party witnesses residing in or around this District:

| Name | Residence | Company | Title | Testimony |
| --- | --- | --- | --- | --- |
| Sawati Chatterjee, Ph.D. | Los Angeles County, California | City of Hope Medical Center | Doctor / Co-Founder of Homology | HMI-102 technology, |

---

[4] This is another piece of information that Plaintiffs would have shared with Defendants had they engaged in the meet-and-confer process required by Local Rule 7-3.

| | | | | research and development |
|---|---|---|---|---|
| City of Hope Medical Center | Los Angeles County, California | City of Hope Medical Center | N/A | HMI-102 technology, research and development |
| California Institute of Technology | Los Angeles County, California | California Institute of Technology | N/A | HMI-102 technology, research and development |
| BTIG, LLC | San Francisco, California | BTIG, LLC | N/A | pheNIX trial data and Homology's cash position |
| Laura Adamson | Los Angeles County, California | Homology (Former Employee) | Director of Upstream Process Development | HMI-102 research and development |
| Victor Zhivich | Los Angeles County, California | Homology (Former Employee) | Senior Research Associate | HMI-102 research and development and pheNIX study protocol |
| Stephanie Kareht, Ph.D. | San Francisco, California | Homology | Senior Director of Medical Writing | HMI-102 research and development, pheNIX study protocol, and Homology's interaction with the FDA |
| Matthew Patterson | San Francisco, California | Homology | Member, Board of Directors | HMI-102 research and development, pheNIX study data, and Homology's cash position |
| Cecilia Fairley | San Francisco, California | Homology | Regional Medical | HMI-102 research and development, |

18

| | | | Affairs Director | pheNIX study, and Homology's interaction with the FDA |
|---|---|---|---|---|
| Janet Iles, M.D. | San Francisco, California | Homology (Former Employee) | Vice President of Clinical Development | HMI-102 research and development, pheNIX study, and Homology's interaction with the FDA |
| Kaiser Permanente Los Angeles Medical Center | Los Angeles County, California | Kaiser Permanente Los Angeles Medical Center | N/A | Information about HMI-102 and the pheNIX study protocol and trial data |
| Children's Hospital of Orange County | Orange County, California | Children's Hospital of Orange County | N/A | Information about HMI-102 and the pheNIX study protocol and trial data |

Cahill Decl. at ¶4.

"Although most, if not all, potential critical current employees reside in [Massachusetts], . . . not all witnesses reside in [Massachusetts]. In fact, many non-party witnesses may reside in this District. Further, access to evidence in this action is not a key factor to consider given the ease of digital exchange of evidence. Again, it is Defendants' burden to show that the convenience weighs heavily in favor of transfer. Where, as here, many non-party witnesses who are not subject to subpoena power in [California] reside in this district, the factor weighs against transfer." *In re Merit Med. Sys. Sec. Litig.*, 2020 U.S. Dist. LEXIS 89964, at *11.

Defendants also fail to explain credibly how litigating in this District would complicate the parties' "access to evidence." "[I]n the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district." *See Simpson Strong-Tie Co. v. Oz-Post Int'l, LLC*, No. 3:18-cv-01188-WHO, 2018 U.S. Dist. LEXIS 140158, at *24 (N.D. Cal. Aug. 17, 2018) (internal quotation marks omitted). "It is not sufficient for the moving party to assert merely that relevant documents are located in the proposed transferee forum, rather the moving party must establish that it would be unable to move or copy the documents easily." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *21 (E.D.N.Y. Sep. 22, 2015). Defendants have failed to provide any evidence whatsoever relating to their inability to move or copy documents easily or the comparative costs of producing and/or transporting documents to the District of Massachusetts as opposed to the Central District of California. Defendants also "fail[ed] to identify specific records, the importance of the records, or that they are so voluminous that it would be difficult to transport them to the Central District." *Fekrat v. United States*, No. CV 13-00594 MMM (PJWx), 2013 U.S. Dist. LEXIS 201490, at *12 (C.D. Cal. May 6, 2013). In reality, the relevant documents in this action are in electronic form and, therefore, easily transferable to this District.

### 4. Location Where the Relevant Agreements Were Negotiated and Executed

Although Defendants argue that the location of the operative facts and contacts relating to this litigation is Massachusetts, Defendants failed to acknowledge the operative facts and contacts relating to this litigation that did occur in the current District. Indeed, HMI-102 was developed by Dr. Chatterjee in Los Angeles County at the City of Hope Medical Center. In order for Homology to study and potentially commercialize HMI-102, Homology had to enter into two licensing agreements with the City of Hope Medical Center and the California Institute of Technology. Both the City of Hope Medical Center

and the California Institute of Technology are organizations that are based in Los Angeles County. ¶¶17-19, 35-37.

Further, the pheNIX clinical trial included two study locations at Kaiser Permanente Los Angeles Medical Center and the Children's Hospital of Orange County, both of which are located within this District. Apton Decl. at ¶4. As such, this factor weighs against transfer because there are operative facts and contacts that occurred in this forum in addition to the fact that relevant agreements were negotiated and executed in this District. Furthermore, Homology's ease in negotiating and executing the relevant agreements within this forum (which include forum selection provisions identifying this District as the district in which litigation be brought, ¶19) negates any inference that this factor weighs in favor of transfer.

### 5. The Respective Parties' Contacts with the Forum

Defendants incorrectly argue that Lead Plaintiffs have little-to-no contacts with the State of California. To the contrary, as previously described, both Lead Plaintiff Rofeh and Plaintiff Pizzuto reside *and* work within this District and, as such, have extensive contacts and connections within this forum. Mr. Rofeh's assignors also reside in this District. Rofeh-Lensky Decl. at ¶¶5-7.

While Defendants correctly assert that they have extensive contacts with the State of Massachusetts, it is also true that Homology has substantial connections and contacts in the State of California and within this District. Most importantly, Homology's co-founder, Dr. Chatterjee, resides and works in this District. Homology also has several contacts in this District in the form of former and current employees in addition to contacts directly relating to the use and potential commercialization of HMI-102, *i.e.*, the City of Hope Medical and the California Institute of Technology. Homology negotiated and executed the licensing agreements for HMI-102 with these entities in this District, which are absolutely fundamental to Homology's business operations. In addition, Homology conducted portions of the pheNIX trial at Kaiser Permanente Los Angeles Medical Center and the Children's Hospital of Orange County, which are both located within this District.

Further, on April 6, 2021, Homology negotiated and executed an underwriting agreement with BTIG in San Francisco, California, the current forum state.

### 6.   The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

Plaintiffs have identified substantial contacts within this District and the State of California that directly relate to Plaintiffs' cause of action. These contacts arise from the location of Plaintiffs, who live and work in this District and purchased Homology stock in this District. Additionally, Plaintiffs' cause of action is connected to this District through the various non-party witnesses identified above, who also live and work in this District. This includes Homology's co-founder, Dr. Chatterjee, who developed HMI-102 at her research lab at the City of Hope Medical Center in Los Angeles County. Further, in order to study and potentially commercialize HMI-102, Homology entered into licensing agreements with both the City of Hope Medical Center and the California Institute of Technology, which are also located in Los Angeles County. Homology also conducted the pheNIX study at two testing locations in this District, *i.e.*, the Kaiser Permanente Los Angeles Medical Center and the Children's Hospital of Orange County. In addition to all of this, there are a number of current and former Homology employees who work in this District or in the State of California that Plaintiffs believe have relevant testimony regarding HMI-102, the pheNIX trial, and/or the steroid regimens that were employed during the pheNIX trial.

### 7.   The Differences in the Costs of Litigation

Defendants argue that the cost of litigation will be lower in the District of Massachusetts. Defs. Mot. at 11. Defendants overlook the fact that litigation-related travel is less burdensome on large corporations than on individual parties to an action and, in particular, Plaintiffs here who have jobs that require them to be present in this District. *See Robles*, 2021 U.S. Dist. LEXIS 246874, *11. Messrs. Rofeh and Pizzuto are individuals residing in this District while Homology is a national corporation. Thus, there inherently would be a greater burden on Plaintiffs by transferring this case to the District of

22

Massachusetts than on Defendants by keeping the case in this District. As Defendants cannot use Section 1404 for judge or forum shopping, likewise, Defendants cannot use Section 1404 to find the judicial district with the absolute lowest possible cost of litigation. If the financial burden of a litigation must be singularly borne by one party, let it be borne by the party with the substantial financial means, *i.e.,* Homology, the large national corporation. *See Chong v. Healthtronics, Inc.*, No. CV-06-1287 (SJF)(MLO), 2007 U.S. Dist. LEXIS 45956, at *38 (E.D.N.Y. June 20, 2007) (finding that "[s]ince plaintiff is an individual and defendant is a corporation, the 'relative means of the parties' factor weighs in favor of plaintiff.").

### 8.    The Availability of Compulsory Process

If this case were transferred to Massachusetts, Plaintiffs would be unable to compel the attendance of many important witnesses at trial. Federal Rule of Civil Procedure 45 requires witnesses living outside a district to appear at trial only if they live or work within the state and would not incur substantial expense. FED. R. CIV. P. 45(c)(1)(B). Thus, Plaintiffs would, for example, have no way to compel Dr. Chatterjee, BTIG, Dr. Kareht, or Ms. Fairley to appear at trial. Plaintiffs would also have no way to command the attendance of representatives from City of Hope Medical Center, California Institute of Technology, the Kaiser Permanente Los Angeles Medical Center, or the Children's Hospital of Orange County. Defendants cannot say the same, as they failed to identify any non-party witnesses that live outside the District and/or would be "unavailable" at trial.

### 9.    Interests of Justice Weigh Heavily Against Transfer

Overall, each of the *Jones* factors distinctly weigh against transfer. In addition, the undue inconvenience that a transfer would cause negates any inference that the convenience of the parties and witnesses is best served through a transfer to the District of Massachusetts. A transfer would effectively force Plaintiffs to choose between jeopardizing their livelihoods or participating in this litigation while Homology, a large national corporation, would not be subjected to such a choice in either district. With relevant non-party witnesses also residing in or around this District, it is clear that a

transfer would not serve the convenience of the witnesses or the interests of justice. Simply put, Defendants have failed to carry the heavy burden that is required for a transfer of venue. Transfers are not intended to provide a forum that is equally convenient or inconvenient and Defendants cannot use a transfer to shift inconvenience rather than eliminate it. As Plaintiffs' choice of forum was not a result of forum shopping or judge shopping, their choice is entitled to great deference and should not be disturbed. Therefore, Defendants' motion to transfer venue should be denied.

Moreover, Defendants argue that the District of Massachusetts has fewer pending cases per judgeship than the Central District of California, 342 compared to 471, respectively. Defs. Mot. at 11-12. However, this difference is not significant nor do the number of cases speak to the complexity and duration needed to litigate those matters. Absent evidence indicating the average time or duration of litigations in the District of Massachusetts compared to the current District, this Court cannot accurately assess whether a transfer is appropriate based on respective caseloads. Indeed, according to Defendants' own cited source, the median time from filing to trial is 34.5 months in the District of Massachusetts in contrast to 23.5 months in this District. Apton Decl. at ¶8. Although this Judicial District currently has a higher caseload, the efficiency of this District as compared to the District of Massachusetts best serves the parties and witnesses.

### C.      Defendants Did Not Comply with Local Rule 7-3.

At no point prior to filing the motion to transfer did Defendants contact Plaintiff to discuss the merits of their motion or Plaintiffs' opposition. In fact, the last time any discussion about the motion to transfer occurred was during the meet-and-confer on July 8, 2022. At that time, Defendants only indicated their "intent" to file a motion to transfer depending on Plaintiffs' allegations in the amended complaint, which was ultimately filed on August 15, 2022. Thus, there was no discussion about the merits of Defendants' motion or the allegations in the amended complaint that would weigh against it. Apton Decl. at ¶9.

"The meet-and-confer requirements of Local Rule 7-3 are in place for a reason, namely to conserve the resources of the parties and the Court by 'allowing for a possible informal resolution of an issue without court intervention, but also to enable the parties to brief the remaining disputes in a thoughtful, concise and useful manner.'" *Rhinesmith v. Tradewinds Bev. Co.,* No. 16-cv-9249-PSG (MRWx), 2018 U.S. Dist. LEXIS 1876, at *11 (C.D. Cal. Jan. 4, 2018) (quoting *Caldera v. J.M. Smucker Co.,* No. 12-cv-4936-GHK (VBKx), 2013 U.S. Dist. LEXIS 183977, at *2 (C.D. Cal. June 3, 2013)). In addition to failing to meet their burden on the motion to transfer itself, Defendants also failed to comply with this Court's meet-and-confer requirements. For this reason alone, the Court should deny Defendants' motion. *See Morgan v. McMillin,* No. 2:20-cv-07774-FLA (AFMx), 2021 U.S. Dist. LEXIS 232931, at *3-5 (C.D. Cal. July 7, 2021) (striking motion for failing to comply with Local Rule 7-3).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion to transfer venue.

Dated: September 16, 2022          LEVI & KORSINSKY, LLP


                                   */s/ Adam M. Apton*
                                   Adam M. Apton (SBN 316506)
                                   445 South Figueroa Street, 31st Floor
                                   Los Angeles, CA 90071
                                   Tel.: (213) 985-7290
                                   Email: aapton@zlk.com

                                   POMERANTZ LLP
                                   Jennifer Pafiti (SBN 282790)
                                   1100 Glendon Avenue, 15th Floor
                                   Los Angeles, CA 90024
                                   Tel.: (310) 405-7190
                                   jpafiti@pomlaw.com

POMERANTZ LLP
Brenda Szydlo (admitted *pro hac vice*)
Dean Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Tel.: (212) 661-1100
bszydlo@pomlaw.com
dferrogari@pomlaw.com

*Counsel for Plaintiffs and*
*Co-Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Tel.: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Jason Rofeh*