LATHAM & WATKINS LLP
Michele D. Johnson (Bar No. 198298)
 *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
T:  (714) 540-1235 / F:  (714) 755-8290

Colleen C. Smith (Bar No. 231216)
 *colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, CA 92130-3086
T:  (858) 523-5400 / F:  (858) 523-5450

Meryn C. N. Grant (Bar No. 291315)
 *meryn.grant@lw.com*
10250 Constellation Blvd
Century City, CA 90067
T:  (424) 653-5500 / F:  (424) 653-5501

*Attorneys for Defendants Homology
Medicines, Inc., Arthur O. Tzianabos, W.
Bradford Smith, Albert Seymour, and
Theresa McNeely*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. PIZZUTO, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>HOMOLOGY MEDICINES, INC., ARTHUR O. TZIANABOS, W. BRADFORD SMITH, ALBERT SEYMOUR, THERESA MCNEELY, and DOES 1-10,<br><br>　　　　　　　　　Defendants. | Case No. 2:22-cv-01968-FLA (JPRx)<br><br>CLASS ACTION<br><br>**DEFENDANTS HOMOLOGY MEDICINES, INC., ARTHUR O. TZIANABOS, W. BRADFORD SMITH, THERESA MCNEELY, AND ALBERT SEYMOUR'S REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER**<br><br>Judge: Hon. Fernando L. Aenlle-Rocha<br>Date: October 14, 2022<br>Time: 1:30 P.M.<br>Place: Courtroom 6B |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     ARGUMENT ........................................................................................... 2

      A.      There Is No Material "Act" to Support Venue ................................... 2

      B.      Transfer to the District of Massachusetts Is in the
           Interests of Justice ........................................................................... 4

           1.      Plaintiff's Choice of Forum Is Not the Deciding
                 Factor in a Class Action Suit ...................................................... 5

           2.      The Alleged Events Took Place In Massachusetts.................... 8

           3.      The Convenience Factors Strongly Favor Transfer
                 to the District of Massachusetts.............................................. 9

           4.      The Interests of Justice Weigh in Favor of Transfer ............... 12

      C.      Defendants Satisfied the Meet and Confer Requirements................. 13

III.    CONCLUSION ....................................................................................... 14

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO TRANSFER
Case No. 2:22-cv-01968-FLA (JPRx)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re AES Corp. Sec. Litig.*,
240 F. Supp. 2d 557 (E.D. Va. 2003) ...................................................................... 4

*Am. Health Cap. v. NextCare Holdings, Inc.*,
No. 2:21-cv-01716-FLA (JPRx), 2021 WL 7707816 (C.D. Cal. Sept. 29, 2021) .................................................................................................................. 13

*Amini Innovation Corp. v. JS Imps., Inc.*,
497 F. Supp. 2d 1093 (C.D. Cal. 2007) .................................................................. 7

*In re AtheroGenics Sec. Litig.*,
No. 05 CIV. 00061, 2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) ..................... 7, 8

*Bondali v. Yum! Brands, Inc.*,
No. SACV 13-117-JST, 2013 WL 12129379 (C.D. Cal. May 1, 2013) .............. 5

*Calavo Growers of California v. Generali Belgium*,
632 F.2d 963 (2d Cir. 1980) ................................................................................ 11

*City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*,
No. SACV-19-06468 AG, 2019 WL 7900030 (C.D. Cal. Nov. 19, 2019) ...... 4, 8

*Cochran v. NYP Holdings, Inc.*,
58 F. Supp. 2d 1113 (C.D. Cal. 1998) .................................................................. 11

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ............................................................................... 11

*Delarosa v. State St. Corp.*,
No. CV 17-00671 BRO, 2017 WL 5592912 (C.D. Cal. June 21, 2017) ............. 4

*Ellis v. Costco Wholesale Corp.*,
372 F. Supp. 2d 530 (N.D. Cal. 2005) ................................................................... 7

*Estrella v. Freedom Fin. Network, LLC*,
No. SACV09-0189 DOC(ANx), 2009 WL 10678991 (C.D. Cal. July 9, 2009) .................................................................................................................. 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*General Ret. Sys. v. Wells Fargo Mortgage Backed Sec.*,
2009 WL 2137094 (N.D. Cal. July 16, 2009) ..................................................... 7

*Goff v. Nationwide Mutual Ins. Co.*,
No. CV 17-7358 PSG, 2018 WL 6003578 (C.D. Cal. Apr. 5, 2018) .........*passim*

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
418 F. Supp. 2d 164 (E.D.N.Y. 2006)................................................................. 8

*Herman v. Western Union Co.*,
No. 2:17-cv-00650-CBM-AJW, 2017 WL 5643145 (C.D. Cal. Mar. 30,
2017) ................................................................................................................. 4

*Jovel v. i-Health, Inc.*,
No. CV 12-05526 DDP, 2012 WL 5470057 (C.D. Cal. Nov. 8, 2012) .............. 8

*La v. Allen*,
No. 08cv0532 WQH, 2008 WL 11337443 (S.D. Cal. Nov. 14, 2008) ............... 3

*Lambert v. Tech. Res. Sols., Inc.*,
No. LACV 18-1114-VAP, 2018 WL 5919211 (C.D. Cal. Aug. 22, 2018) ....... 11

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987) ................................................................... 2, 5, 6

*Luna v. Wal-Mart Transp., LLC*,
No. EDCV 18-331 PSG (KKx), 2018 WL 3569357 (C.D. Cal. July 11,
2018) ............................................................................................................. 5, 6

*Maxon v. Jefferson Pilot Sec. Corp.*,
No. C 01-02668 CRB, 2002 WL 523575 (N.D. Cal. Apr. 2, 2002) .................. 11

*Rabinowitz v. Samsung Elecs. Am., Inc.*,
No. 14-cv-00801-JCS, 2014 WL 5422576 (N.D. Cal. Oct 10, 2014)................ 12

*Reese v. Malone*,
No. CV 07-07511-RGK, 2008 WL 11342462 (C.D. Cal. June 19, 2008)........... 6

*Robert Bosch, LLC v. Snap-On Inc.*,
No. CV 11-07784 MMM, 2012 WL 12931147 (C.D. Cal. Apr. 4, 2012) ......... 13

*Roling v. E\*Trade Sec., LLC*,
756 F. Supp. 2d 1179 (N.D. Cal. 2010) ............................................................. 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO TRANSFER
Case No. 2:22-cv-01968-FLA (JPRx)

*Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*,
  No. CV 17-4977 PSG (SKX), 2018 WL 5099708 (C.D. Cal. Jan. 9, 2018)...... 11

*S.E.C. v. Rose Fund, LLC*,
  No. C 03-04593 WHA, 2004 WL 2445242 (N.D. Cal. Jan. 9, 2004)................. 7

*Sec. Inv. Prot. Corp. v. Vigman*,
  764 F.2d 1309 (9th Cir. 1985).................................................................... 3, 7

*Signal IP, Inc. v. Ford Motor Co.*,
  No. LA CV14-03106 JAK (JEMx), 2014 WL 4783537 (C.D. Cal. Sept. 25,
  2014) ................................................................................................................ 10

*Simpson Strong-Tie Co. v. Oz-Post Int'l, LLC*,
  No. 3:18-cv-01188-WHO, 2018 WL 3956430 (N.D. Cal. Aug. 17, 2018) ....... 12

*In re Triton Ltd. Sec. Litig.*,
  70 F. Supp. 2d 678 (E.D. Tex. 1999) .................................................................. 4

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
  No. CV 11-9495 PSG, 2013 WL 4517242 (C.D. Cal. Aug. 26, 2013)........ 1, 3, 4

*In re Yahoo! Inc.*,
  Nos. CV 07-3125 CAS, CV 07-3902-CAS, 2008 WL 707405
  (C.D. Cal. Mar. 10, 2008)................................................................. 2, 3, 7, 9

*Zorn v. Anderson*,
  263 F. Supp. 745 (S.D.N.Y. 1966) ..................................................................... 4

**STATUTES**

28 U.S.C.
  § 1404(a)............................................................................................................. 2
  § 1406(a)............................................................................................................. 2

## I.    INTRODUCTION

A transfer of venue from this District to the District of Massachusetts is proper because Plaintiffs' claims under the Securities Exchange Act of 1934 ("Exchange Act") center on statements made by Homology's high-level decision-makers from the company's headquarters in Massachusetts.  For all of their hand-waving, Plaintiffs do not even come close to disputing that core reasoning.  Instead, they spend most of their opposition brief listing every ancillary business connection Homology has to California that may tangentially relate to the development of the HMI-102 gene therapy.  By highlighting only these attenuated connections to the region, Plaintiffs concede that the gravamen of the action has nothing to do with California.  As with nearly every securities class action, the claims arise from and will be tested through evidence and witnesses located at the company's headquarters—in this case, in Massachusetts.

*First*, Plaintiffs do not point to any "acts" relating back to the alleged Exchange Act violations that would tie Defendants to this District and confer venue under Section 27 of the Act.  The connections to the forum that Plaintiffs tout (*e.g.*, that Homology's co-founder developed an aspect of HMI-102 in Los Angeles County) are not "of material importance to the consummation of the [alleged securities fraud] scheme," and thus do not support venue in the Central District.  *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11-9495 PSG (JCGx), 2013 WL 4517242, at *6-7 (C.D. Cal. Aug. 26, 2013) (citation omitted).  Venue also is not determined by *Plaintiffs'* location, as their opposition suggests, but rather by the location of *Defendants'* relevant actions, all of which occurred in Massachusetts.

*Second*, even if this suit was properly brought in the Central District, a discretionary transfer of venue to the District of Massachusetts is in the interests of justice because courts recognize that securities class actions revolve around the defendant's conduct, and litigation will be more convenient and cost-effective in

the location where the majority of the evidence and witnesses are located.  *See* 28 U.S.C. § 1406(a); *id.* § 1404(a) (delineating discretionary transfer for "the convenience of the parties and the witnesses, in the interest of justice"); *In re Yahoo! Inc.*, Nos. CV 07-3125 CAS, CV 07-3902-CAS, 2008 WL 707405, at *8-9 (C.D. Cal. Mar. 10, 2008) (granting motion to transfer Exchange Act claims). Plaintiffs are incorrect that their choice of forum should be given near-total deference; under well-established case law, nationwide class action plaintiffs are entitled to lesser deference because the suit could have been brought in any district. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual . . . represents a class, the named plaintiff's choice of forum is given less weight.") (citations omitted).  Plaintiffs' further contentions that Lead Plaintiff, Mr. Rofeh, and the original named plaintiff, Mr. Pizzuto, will be severely inconvenienced if this litigation is transferred are implausible given the very limited in-person requirements for class action plaintiffs acting in those roles.  By contrast, the Individual Defendants and numerous other Homology employee will be expected to actively participate as the key witnesses in this action, especially if the case goes to trial.  Plaintiffs' failure to identify any meaningful connections between this litigation and the forum underscores that the interests of justice favor transfer.

## II.    ARGUMENT

### A.    There Is No Material "Act" to Support Venue

Plaintiffs argue that venue is proper under Section 27 of the Exchange Act based on Defendants' supposed "acts" in furtherance of the fraudulent scheme alleged in the complaint.  *See* Opp. at 8-11.  According to Plaintiffs, the qualifying "acts" undertaken in the forum include that:  "Homology's co-founder developed the delivery agent used for HMI-102" in Los Angeles County (Opp. at 9-10); Homology has licensing agreements with two hospitals in the Central District (*id.*); Homology conducted some clinical testing in the Central District (*id.*); and Plaintiffs live in and purchased Homology securities in the forum (*id.* at 10-11).

These miscellaneous facts do not relate back to the alleged Exchange Act violations and therefore do not support a finding that venue is proper based on "any act or transaction constituting the violation." *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985). Plaintiffs' arguments simultaneously misunderstand the crux of the "act or transaction constituting the violation" requirement—that a defendant's act must relate back to the alleged violation—and tacitly concede that there are only tenuous connections between Homology and the forum.

While an alleged act forming the basis of venue "need not be crucial," it "must be '*of material importance to the consummation of the scheme*.'" *Vanleeuwen*, 2013 WL 4517242, at *6-7 (citation omitted) (emphasis added). Where, as here, the alleged "scheme" is based on securities fraud claims that "turn[] on the allegedly false public statements and the decisions made by [a defendant]'s senior management, which indisputably occur[] at [defendant]'s headquarters," the alleged acts "are deemed to 'occur'" where the defendant company resides. *In re Yahoo!*, 2008 WL 707405, at *8-9 (granting motion to transfer venue of Exchange Act claims) (citations omitted); *see also La v. Allen*, No. 08cv0532 WQH (WMc), 2008 WL 11337443, at *2-3 (S.D. Cal. Nov. 14, 2008) (finding venue for Exchange Act claims was improper because acts cited by plaintiff "were not of material importance" to the allegations in the complaint). Plaintiffs offer no explanation as to how the development of the drug or where it was tested were "material" to a scheme to commit securities fraud later on. And Plaintiffs' reliance on those irrelevant and ancillary facts only highlights that the conduct underlying their claim did *not* occur in California.

Plaintiffs' additional argument that they purchased Homology securities and received the allegedly misleading statements in the forum is also unavailing. Courts have made clear time and again that it is the *Defendants*' connection to the forum that governs. *See Vanleeuwen*, 2013 WL 4517242, at *6-7; *see also*

*Vigman*, 764 F.2d at 1317-18 (evaluating individual defendants' connections to the forum and allowing amendment of the pleadings to "show the nexus between these two defendants and the scheme").  Indeed, Plaintiffs' proposed rule would allow a publicly traded company to be sued anywhere that a stockholder could possibly reside, which is not the law.

And it is similarly well-settled that the mere fact that a company's statements and SEC filings are passively "made available" in the district is insufficient to establish venue.  *Vanleeuwen*, 2013 WL 4517242, at *6 (finding plaintiff's location when reading offering documents does not establish venue and noting there is "no support for the proposition that venue lies in any district in which an allegedly-false document was 'made available' to the plaintiff"); *see* Mot. at 5; *Delarosa v. State St. Corp*., No. CV 17-00671 BRO (FFMx), 2017 WL 5592912, at *4 (C.D. Cal. June 21, 2017) (finding venue in California improper for a Massachusetts-based company despite allegations that SEC filings were disseminated nationwide and transferring case to the District of Massachusetts).[1]

Because Plaintiffs' actions are not enough to establish venue, and Defendants' actions unequivocally centered on Massachusetts, there is no "act or transaction constituting a violation" to support venue in this District.

### B.   Transfer to the District of Massachusetts Is in the Interests of Justice

Even in cases where a court does not find that Section 27 requires transfer, courts routinely transfer securities class actions to the state of the Defendants' residence in the interests of justice.  *See, e.g.*, *City of N. Miami Beach Police*

---

[1] Plaintiffs' cited cases only prove the point further, because they expressly find venue based on the *defendants*' forum connections, not those of the plaintiffs.  *See In re Triton Ltd. Sec. Litig*., 70 F. Supp. 2d 678, 686-87 (E.D. Tex. 1999) (cited Opp. at 11) (finding defendant was a resident of the district); *Zorn v. Anderson*, 263 F. Supp. 745, 748 (S.D.N.Y. 1966) (cited Opp. at 11) (finding defendants had offices in the forum); *In re AES Corp. Sec. Litig*., 240 F. Supp. 2d 557, 561-62 (E.D. Va. 2003) (cited Opp. at 11) (adopting the test that venue lies if a "defendant causes false or misleading information to be transmitting into a judicial district").

*Officers' & Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, No. SACV-19-06468 AG, 2019 WL 7900030, at *3 (C.D. Cal. Nov. 19, 2019); *Herman v. Western Union Co.*, No. 2:17-cv-00650-CBM-AJW, 2017 WL 5643145, at *2-3 (C.D. Cal. Mar. 30, 2017); *Bondali v. Yum! Brands, Inc.*, No. SACV 13-117-JST (JPRx), 2013 WL 12129379, at *4 (C.D. Cal. May 1, 2013).  This is for good reason—a securities class action typically alleges misconduct that occurs in the Defendants' home state, which then has roughly identical effects in dozens of other jurisdictions via trades on a nationwide exchange.  It makes little sense for venue to turn on the happenstance of where the named plaintiff resides, since that plaintiff is identically situated to plaintiffs across the country.  Rather, the proper forum is where the relevant evidence, witnesses and alleged misconduct took place, which is typically (as here) the defendant's principal place of business.

Plaintiffs offer no response to this core rationale.  Instead, they rely on snippets of language from cases involving *individual*—not class action—claims to argue that the court should defer to their choice of forum.  Those decisions are inapposite, and their logic has been rejected by courts in the class action context, where the Plaintiff's choice of forum is given only limited deference.  *See, e.g.*, *Lou*, 834 F.2d at 739; *Luna v. Wal-Mart Transp., LLC*, No. EDCV 18-331 PSG (KKx), 2018 WL 3569357, at *5 (C.D. Cal. July 11, 2018).  Plaintiffs also repeatedly point to ancillary connections between Homology and the forum, which do not relate to the heart of their claims or convincingly demonstrate that the focus of the litigation is in Los Angeles.  Under a proper application of the *Jones* factors, this case should plainly be transferred.

### 1. Plaintiff's Choice of Forum Is Not the Deciding Factor in a Class Action Suit

Plaintiffs lean heavily on their choice of forum as a reason that the motion to transfer should be denied.  They argue that Plaintiffs have "legitimate connections to this District" because Lead Plaintiff, Mr. Rofeh, and named plaintiff, Mr.

Pizzuto, live and work in the Central District, and would be burdened by litigating in another forum.[2] Opp. at 12-13. But Plaintiffs cite no case supporting the conclusion that transfer is improper if a lead plaintiff—much less an absent class member—resides in the original forum. Nor would such a rule make any sense. The most a lead plaintiff is required to do in a securities litigation is attend a deposition (that easily can and would be taken in California) and review some documents (which can be done virtually or by mail). There is thus no practical hardship in pursuing this case in Massachusetts.

Plaintiffs vaguely assert Mr. Rofeh would be "preclude[d] from participating in this lawsuit" if it were out of state (Opp. at 13), but do not explain how or why, especially given that most class action plaintiffs are not required to, and typically do not, attend hearings. Plaintiffs' arguments about Mr. Pizzuto are even more puzzling. Mr. Pizzuto has no formal obligations to the putative class, and Plaintiffs have provided no reason why his "ability to participate in the lawsuit would be severely impeded" by the transfer (*id.*), or why—even assuming that were true— that should influence the Court's decision regarding venue. *See Reese v. Malone*, No. CV 07-07511-RGK (RCx), 2008 WL 11342462, at *4 (C.D. Cal. June 19, 2008) (a "Nominal Plaintiff's decision to file in California is afforded little weight" in securities class action transfer analysis) (citation omitted).

As Defendants explained in their opening motion, Plaintiffs are entitled only to "limited" deference to their choice of forum because they filed suit as "representative[s] of a putative national class." Mot. at 9-10 (quoting *Luna*, 2018 WL 3569357, at *5); *see also Lou*, 834 F.2d at 739 ("[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."); *Goff v. Nationwide Mutual Ins. Co.*, No. CV 17-7358 PSG (AFMx), 2018 WL 6003578, at *4 (C.D. Cal. Apr. 5, 2018) (same). This is

---

[2] The complaint does not allege that Mr. Rofeh lives in the Central District, but even assuming that is true, it still does not tip the *Jones* factor in his favor.

particularly true in "stockholder class actions" that can be filed by any stockholder. *In re AtheroGenics Sec. Litig.*, No. 05 CIV. 00061, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006).

Plaintiffs cite several cases that purportedly stand for the opposite contention—that their choice of forum should be given "significant weight" and should "rarely be disturbed." Opp. at 12-14 (citations omitted) (emphasis removed). But these authorities are inapt. All but *two* of Plaintiffs' cited cases speak to the deference provided to plaintiffs suing on *individual* claims or enforcement actions, not class claims. *See Yahoo!*, 2008 WL 707405, at *8 ("plaintiffs' reliance on *Vigman*, which was not a class action case, is inapposite" on the question of deference to plaintiffs' choice of venue).[3] And the two class action cases Plaintiffs cited (only one of which is a securities class action) granted deference to the plaintiff's choice of forum based on *both parties'* significant contacts with, and relevant activity in, the forum, not purely based on the plaintiff's choice to file suit there. *See* Opp. at 12-13; *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179 (N.D. Cal. 2010) (giving weight to plaintiff's choice of forum because "both plaintiffs and defendant ha[d] significant contacts with the [forum]"); *General Ret. Sys. v. Wells Fargo Mortgage Backed Sec.*, 2009 WL 2137094, at *21-22 (N.D. Cal. July 16, 2009) (deference is "based on the extent of both parties' contacts with the forum, and the extent of relevant activity in the forum," including defendant's headquarters in the forum). Under this test, Plaintiffs' choice of forum carries "little weight" because "the crux of the case lies not in [Plaintiffs'] act of purchasing the [stock] in Los Angeles, but instead in [the] issue of the alleged misrepresentations," which they "would have perceived in

---

[3] *See Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005) (individual Title VII action); *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1110 (C.D. Cal. 2007) (individual patent infringement and copyright action); *Vigman*, 764 F.2d at 1317 (individual securities action); *S.E.C. v. Rose Fund, LLC*, No. C 03-04593 WHA, 2004 WL 2445242, at *1 (N.D. Cal. Jan. 9, 2004) (enforcement action brought by SEC).

identical form in any state." *Jovel v. i-Health, Inc.*, No. CV 12-05526 DDP (JCGx), 2012 WL 5470057, at \*6 (C.D. Cal. Nov. 8, 2012).

### 2.    The Alleged Events Took Place In Massachusetts

The location of alleged events and relevant contacts with the forum (*Jones* factors 1, 4, and 5), all weigh in favor of a transfer of venue to the District of Massachusetts. *See* Mot. at 7-9. A discretionary transfer is proper because, as Plaintiffs admit, Defendants "have extensive contacts with the State of Massachusetts." Opp. at 21. Defendants all reside and work in or near Massachusetts, along with the majority of Homology's employees, including those who oversaw the pheNIX clinical trial of HMI-102. *See* Mot. at 1-2, 11; *Goff*, 2018 WL 6003578, at \*4 (transferring putative class action where, among other factors, "the majority of Defendants' employees who designed, implemented, and oversaw the [programs] at issue in this case" reside in the transferee state).

Further, as already discussed above and in Defendants' Motion, the key events giving rise to Plaintiffs' Exchange Act claims—namely, the alleged misstatements—occurred in Massachusetts, and Plaintiffs do not contend otherwise. *See* Mot. at 7-8. Indeed, Plaintiffs do not cite a *single case* (much less a securities fraud class action) in their discussion of the location and contact factors because the law is so plainly against them. *See* Opp. at 20-22. While there is no "*per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered," "as a practical matter, such transfers are routine." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006). This is so because in securities class actions, "the alleged misstatements and omissions are the heart of the action and outweigh the importance of the underlying misconduct." *City of N. Miami Beach Police Officers' & Firefighters' Ret. Plan*, 2019 WL 7900030, at \*3; *see* Mot. at 8 (citing cases); *In re AtheroGenics Secs. Litig.*, 2006 WL 851708, at \*3 ("In securities fraud actions, '[m]isrepresentations and omissions are deemed to 'occur' in the

district where they are transmitted or withheld, not where they are received.'" (citation omitted)). Plaintiffs recite the same laundry list of tangential facts about Homology's Los Angeles and San Francisco connections already discussed above (Opp. at 20-22), none of which move the needle because they are not relevant to Plaintiffs' actual claims. *See Yahoo!*, 2008 WL 707405, at *8-9.

Plaintiffs' only additional argument against a finding that *Jones* factors 1, 4, and 5 weigh in favor of a transfer is that the Plaintiffs "reside *and* work within th[e Central] District." Opp. at 21. Plaintiffs cite no supporting cases that would indicate what weight their location should be given, nor do they address the issues raised above—that neither Mr. Rofeh nor Mr. Pizzuto are likely to be burdened by the venue transfer because their roles in the litigation will be limited.

### 3. The Convenience Factors Strongly Favor Transfer to the District of Massachusetts

The convenience factors (*Jones* factors 6, 7, and 8) weigh in favor of a transfer. *See* Mot. at 10-11. Plaintiffs admit that Homology's "principal executive office [is] in Bedford, Massachusetts" (Opp. at 15), "most, if not all, potential critical current employees reside in [Massachusetts or neighboring states]" (*id*. at 19), and relevant documents would have to be transported to California (*id.* at 20). Having conceded those key elements of convenience, Plaintiffs resort to arguing that the litigation should remain in the Central District because transfer will cause "financial loss or harm" to Mr. Rofeh or Mr. Pizzuto (*id.* at 15); Defendants did not properly identify their witnesses (*id.* at 15-16); some of Plaintiffs' supposedly "relevant non-party witnesses reside in California" (*id.* at 17-19); and discovery is largely electronic nowadays (*id.* at 20). None of these glancing blows detracts from the bigger picture: this litigation revolves around Massachusetts and the burdens of conducting discovery, and potentially going to trial, will be significantly lessened by a transfer of venue to that state.

As already discussed, it is not apparent why Mr. Rofeh or Mr. Pizzuto (to the extent his involvement is still required) would suffer "financial loss or harm" from litigating this case in Massachusetts. Lead plaintiffs in securities class actions rarely attend hearings, and Defendants would certainly plan to take their depositions in California. Moreover, "whatever conveniences may exist for Plaintiffs in the Central District are outweighed by the *in*conveniences to the Defendants" because "Defendants maintain their principal place of business" in Massachusetts, and the all "of Defendants' employees who designed, implemented, and oversaw the [clinical trial] at issue in this case," and made the alleged misstatements that form the basis of Plaintiffs' claims, "reside and work" in Massachusetts or New Hampshire. *Goff*, 2018 WL 6003578, at *4. And because the "factual inquiries in the case are focused on Defendant[s'] activities," the cost of litigating from across the country will be higher for Defendants because more witnesses will be forced to travel and "business activity may be disrupted." *Signal IP, Inc. v. Ford Motor Co.*, No. LA CV14-03106 JAK (JEMx), 2014 WL 4783537, at *4 (C.D. Cal. Sept. 25, 2014); *see also Estrella v. Freedom Fin. Network, LLC*, No. SACV09-0189 DOC(ANx), 2009 WL 10678991, at *3 (C.D. Cal. July 9, 2009) (granting motion to transfer over arguments about the "relative means of the parties" because the "allegations in [the] case focus on Defendants' conduct," which favors transfer). This is so, despite Plaintiffs' arguments about the availability of e-discovery (Opp. at 20), because it is "well established that the 'costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored.'" *Goff*, 2018 WL 6003578, at *5 (citation omitted).

Plaintiffs next argue that Defendants have not provided sufficient factual support for their assertion that continued litigation in the Central District will be inconvenient. *See* Opp. at 15-16. But unlike the claims in the non-securities cases

that Plaintiffs rely on,[4] fraud-based Exchange Act claims arise from specific alleged misrepresentations, and the key witnesses are the individuals who allegedly made those statements—here, the Individual Defendants.[5] *See Maxon v. Jefferson Pilot Sec. Corp.*, No. C 01-02668 CRB, 2002 WL 523575, at *3 (N.D. Cal. Apr. 2, 2002) ("allegedly illegal actions" in a fraud case "are the implementation of [a] scheme, not its invention," and the "relevant witnesses" are located where defendant operates its business). Those individuals are all in and around Massachusetts, and Plaintiffs tellingly identify *no* material witness who resides in California. Mot. at 1-2, 11.

Plaintiffs vaguely suggest that certain "third-party witnesses reside in California," but offer no explanation as to why those witnesses (such as Victor Zhivich, a former senior research associate, or Cecilia Fairley, a regional medical affairs director) would have any relevant knowledge as to whether Defendants violated the Exchange Act. In any event, even where plaintiffs have "identified [several] California-based witnesses," transfer is warranted when "many if not most of Defendants' employees who were 'principally tasked'" with the work implicated by the complaint reside in another venue. *Goff*, 2018 WL 6003578, at *6; *see also Lambert v. Tech. Res. Sols., Inc.*, No. LACV 18-1114-VAP (RAOx),

---

[4] *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (cited Opp. at 16) (denying motion to transfer breach of contract case, in part because damages witnesses were located in Montana and "public interest" weighed in favor of keeping case in Montana); *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir. 1980) (cited Opp. at 16) (remanding to reconsider forum non conveniens dismissal of breach of contract and fraud case because not all of the underwriter defendants agreed to the conditional dismissal); *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, No. CV 17-4977 PSG (SKX), 2018 WL 5099708, at *3 (C.D. Cal. Jan. 9, 2018) (cited Opp. at 15) (defendant in copyright and unfair competition case failed to adequately explain inconvenience when it had a Los Angeles office and previously litigated in Los Angeles); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998) (cited Opp. at 15-16) (defendants in defamation action did not identify any specific witnesses beyond "any employees of NYP Holdings who worked on the Column" that would be inconvenienced without transfer).

[5] The only challenged statement not attributed to one of the Defendants is a non-actionable statement made by a third-party analyst. *See* Mot. at 8.

2018 WL 5919211, at *7 (C.D. Cal. Aug. 22, 2018) (convenience of witnesses favored transfer where "the majority of the material witnesses" were defendant's employees residing in Georgia, despite plaintiff's assertion that five witnesses resided in California).  That is precisely the case here.  Plaintiffs do not dispute that the Homology employees who were principally responsible for the HMI-102 pheNIX clinical trial, including most corporate officers and high-level individuals in the company, work at Homology's headquarters in Massachusetts.  Mot. at 2, 9.

In short, because the Exchange Act claims in this case "focus on *Defendants'* conduct, the convenience of the parties and witnesses weighs in favor of transfer."  *Goff*, 2018 WL 6003578, at *6; *see also Simpson Strong-Tie Co. v. Oz-Post Int'l, LLC*, No. 3:18-cv-01188-WHO, 2018 WL 3956430, at *8 (N.D. Cal. Aug. 17, 2018) (cited Opp. at 20) (where the "bulk of the relevant evidence usually comes from the" defendant, "the more convenient location is typically where [the defendant's] evidence is stored") (citation omitted).

### 4.    The Interests of Justice Weigh in Favor of Transfer

Plaintiffs' emphasis of loose ties between the facts of this case and the forum only underscores that "[t]here are few meaningful connections between Plaintiffs' claims and this district" and transfer is warranted.  *Goff*, 2018 WL 6003578, at *6. While there may be some small "California component to Plaintiffs' allegations," it is "tenuous compared to Defendants' connections to" Massachusetts, and the "basis of [Plaintiffs' claims] stems from Defendants' conduct at their headquarters" in Massachusetts.  *Id.*  Massachusetts also has an interest in hearing a case that centers on a business headquartered there.  *See* Mot. at 11 (citing *Rabinowitz v. Samsung Elecs. Am., Inc.*, No. 14-cv-00801-JCS, 2014 WL 5422576, at *7-8 (N.D. Cal. Oct 10, 2014)).

Defendants' Motion highlighted the disparity between pending cases per judgeship in the Central District of California and the District of Massachusetts, and Plaintiffs responded with the median time from filing to trial in each district.

However, the length of time from filing to trial "is but one metric for determining the relative congestion of courts," and the difference in filed cases per judgeship is "the more relevant and revealing statistic." *Goff*, 2018 WL 6003578, at *7; *see Robert Bosch, LLC v. Snap-On Inc.*, No. CV 11-07784 MMM (AGRx), 2012 WL 12931147, at *10 (C.D. Cal. Apr. 4, 2012) ("median time to trial" statistic is "of minimal weight"). Here, contrary to Plaintiffs' assertion, the difference between the pending cases per judgeship in Massachusetts and this District (249 versus 563 weighted, respectively, Mot. at 11-12) is significant and favors transfer. *See Am. Health Cap. v. NextCare Holdings, Inc.*, No. 2:21-cv-01716-FLA (JPRx), 2021 WL 7707816, at *3 (C.D. Cal. Sept. 29, 2021) (transferring action where this district had "a significantly heavier caseload per judgeship" than the transferee district); *Robert Bosch*, 2012 WL 12931147, at *10 (transferring case from a district with 602 weighted filings per judgeship to a district with 400 weighted filings per judgeship per year).

## C.    Defendants Satisfied the Meet and Confer Requirements

Finally, Plaintiffs contend that Defendants failed to satisfy the meet and confer requirements under the local rules. Opp. at 24-25. That is incorrect. Contrary to Plaintiffs' assertion that Defendants did not reach out to discuss the merits of the transfer motion, in fact, counsel for the parties had more than one discussion on this topic, in which counsel for Defendants explained why the district in which Homology is headquartered is the appropriate venue. *See* Smith Decl. ¶ 2. During a call on July 8, 2022, Defendants' counsel asked for clarification regarding Plaintiffs' view that the Central District of California was the appropriate venue, and Plaintiffs' counsel outlined the basic grounds for their position. *Id.* ¶ 3. After that discussion, Plaintiffs' counsel sent an email that simply stated: "Further to our conversation last week, plaintiffs will not consent to a transfer. Assuming defendants are still OK with the schedule outlined below, we should go ahead and get the stipulation on file." *Id.* ¶ 4, Ex. A. Plaintiffs did not

request a further meet and confer in that email nor express the view that the meet and confer discussions that had taken place to that point were not sufficient. *Id.* Indeed, the schedule referenced in the email specifically contemplates the filing of a motion to transfer. *Id.* In response to the July 12 email, counsel for Defendants reached out to Plaintiffs' counsel to set up a further call, which took place on July 13. *Id.* ¶ 5. Defendants' counsel believed in good faith that these steps had satisfied the meet and confer requirements; they accordingly request that the Court reject Plaintiffs' invitation to deny the motion on this basis.

## III.    CONCLUSION

Defendants respectfully request that the Court transfer this case to the United States District Court for the District of Massachusetts, Boston Division.

Dated:  September 23, 2022                Respectfully submitted,

LATHAM & WATKINS LLP
Michele D. Johnson
Colleen C. Smith
Meryn C.N. Grant

By: */s/ Michele D. Johnson*
          Michele D. Johnson

*Attorneys for Defendants Homology Medicines, Inc., Arthur O. Tzianabos, W. Bradford Smith, Albert Seymour, and Theresa McNeely*