# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MICHAEL C. PIZZUTO, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

HOMOLOGY MEDICINES, INC., ARTHUR O. TZIANABOS, W. BRADFORD SMITH, ALBERT SEYMOUR, THERESA MCNEELY, and JOHN DOES 1-10,

        Defendants.

Civil Action No.: 1:23-cv-10858-AK

**Leave to File 13-Page Reply
Granted on 5/9/2023**

## DEFENDANTS HOMOLOGY MEDICINES, INC., ARTHUR O. TZIANABOS, W. BRADFORD SMITH, ALBERT SEYMOUR, AND THERESA MCNEELY'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .............................................................................................1

II.   ARGUMENT.....................................................................................................2

    A.    Plaintiffs Do Not Plead Facts Establishing a False or Misleading
    Statement...................................................................................................2

        1.    Homology's Statements Made Before the Second Data Cut Are
        Not Misleading.................................................................................2

        2.    Statements Made to and by Market Analysts Are Not Actionable..............4

        3.    Defendants' Post-November 2020 Statements Are Not Misleading ...........5

        4.    Statements of Opinion and Corporate Optimism Are Not
        Actionable .......................................................................................7

    B.    Plaintiffs' Alleged Facts Support Good Faith, Not Scienter...................................9

        1.    Plaintiffs Do Not Allege Intent to Deceive....................................................9

        2.    Plaintiffs Have No Response to the Far More Compelling Non-
        Fraudulent Inference .................................................................................12

    C.    Plaintiffs' Alleged Corrective Disclosures Do Not Establish Loss
    Causation..................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Ariad Pharms., Inc. Sec. Litig.*,
  842 F.3d 744 (1st Cir. 2016) ................................................................................................4

*In re Biogen IDEC, Inc. Sec. Litig.*,
  2007 WL 9602250 (D. Mass. Oct. 25, 2007) ........................................................................3

*In re Biogen Inc. Sec. Litig.*,
  857 F.3d 34 (1st Cir. 2017) ..............................................................................................10

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*
  22 F.4th 1 (1st Cir. 2021) .................................................................................................12

*Dahhan v. OvaScience, Inc.*
  321 F. Supp. 3d 247 (D. Mass. 2018) ................................................................................12

*In re Delcath Sys., Inc. Sec. Litig.*,
  36 F. Supp. 3d 320 (S.D.N.Y. 2014) ....................................................................................5

*Dresner v. Silverback Therapeutics, Inc.*,
  2023 WL 2913755 (W.D. Wash. Apr. 12, 2023) ....................................................................3

*Gerneth v. Chiasma, Inc.*,
  2018 WL 935418 (D. Mass. Feb. 15, 2018) ..........................................................................5

*Harrington v. Tetraphase Pharms. Inc*,
  2017 WL 1946305 (D. Mass. May 9, 2017) ..........................................................................8

*Kader v. Sarepta Therapeutics, Inc.*,
  2016 WL 1337256 (D. Mass. Apr. 5, 2016) ..........................................................................6

*Local No. 8 IBEW Ret. Plan & Trust v. Vertex Pharms., Inc.*,
  838 F.3d 76 (1st Cir. 2016) ..............................................................................................11

*Maldonado v. Dominguez*,
  137 F.3d 1 (1st Cir. 1998) .................................................................................................11

*Maldonado v Fontanes*,
  568 F.3d 263 (1st Cir. 2009) ..............................................................................................6

*Metzler Asset Mgmt. GmbH v. Kingsley*,
  305 F. Supp. 3d 181 (D. Mass. 2018) ...........................................................................3, 4, 9

*Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*,
523 F.3d 75 (1st Cir. 2008)........................................................................................4

*In re Nature's Sunshine Prods. Sec. Litig.*,
486 F. Supp. 2d 1301 (D. Utah. 2007)......................................................................11

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) ......................................................................................13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)......................................................................................................8

*In re Peritus Software Servs., Inc. Sec. Litig.*,
52 F. Supp. 2d 211 (D. Mass. 1999) ............................................................................5

*In re Regulus Therapeutics Inc. Sec. Litig.*,
406 F. Supp. 3d 845 (S.D. Cal. 2019).......................................................................13

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*,
2005 WL 1365465 (D.N.J. June 7, 2005)..................................................................11

*Thant v. Karyopharm Therapeutics Inc.*,
43 F.4th 214 (1st Cir. 2022).........................................................................................9

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
319 F. Supp. 2d 152 (D. Mass. 2004) .....................................................................5, 8

iii

## I.    INTRODUCTION

Plaintiffs seek to manufacture a fraud claim by capitalizing on the inherent uncertainty of the regulatory process for developing new medicines, even though Homology fully disclosed its clinical trial data for each data cut as promised, along with the significant risks associated with the first-ever human trial of its genetic medicines.  Plaintiffs assume that because an ongoing clinical trial was later subject to a (temporary) clinical hold, Homology must have knowingly concealed negative patient data.  But no pled facts support this theory, and settled law prevents Plaintiffs from manufacturing fraud based on hindsight and their say-so.

First, Plaintiffs have not alleged falsity for any of the three categories of challenged statements.  One, Plaintiffs' challenge to the pre-November 2020 statements fails because, as Plaintiffs admit, there is no duty to disclose clinical trial data in real time.  Plaintiffs do not dispute that Homology's statements related to the first data cutoff were truthful, and Plaintiffs' different interpretation of data not included in that data cutoff does not manufacture a false statement or omission.  Two, Plaintiffs' challenge to statements allegedly made to and by market analysts fails because no facts contradict the relevant statement confirming (accurately) that Homology's development plan had not changed.  Three, Plaintiffs' challenge to the post-November 2020 statements fails because no data from the dose-expansion phase of the trial, much less negative data, supports their contention that Defendants knew of "severe safety risks."  Homology did not promise that the first-ever human trial to identify a dose of HMI-102 that was safe for further testing would proceed without a hitch.  Finally, many of the challenged statements in those three categories are nonactionable statements of opinions or corporate puffery that Plaintiffs do not (and cannot) allege were misleading to any reasonable investor.

Second, Plaintiffs' theory of scienter fails because it relies on conclusory allegations that Homology had (unidentified) "material, adverse information concerning the trial" and knew the

modifications to the steroid regimen for the dose-escalation phase were insufficient for patient safety.  Plaintiffs do not point to any concealed facts that rendered Defendants' statements misleading, nor any facts that allowed them to predict the FDA's temporary clinical hold. Plaintiffs offer no logical reason why Homology would disclose data and proceed to the next phase, which exponentially increased its investment in the trial if anyone believed, as Plaintiffs claim, HMI-102 was "toxic" and "ineffective" or the steroid regimen posed "severe safety risks."

Third, Plaintiffs fail to plead facts sufficient to establish loss causation.  None of the five supposed corrective disclosures contained information that corrected any alleged misstatement. And while the FDA's imposition of a temporary clinical hold resulted in a stock price drop, that was a risk Homology fully disclosed.  The Complaint should be dismissed.

## II.     ARGUMENT

### A.     Plaintiffs Do Not Plead Facts Establishing a False or Misleading Statement

#### 1.     Homology's Statements Made Before the Second Data Cut Are Not Misleading

Before Homology disclosed the results from all six patients in the dose-escalation phase, it disclosed data from the first three patients based on a pre-planned data cut—December 2, 2019—while cautioning investors that the data was preliminary and subject to change.  Doc No. 90 at 6.  Plaintiffs do not dispute that Homology's statements discussing specific patient data were expressly limited to the first data cut, and Defendants did not disclose data from Patients 4, 5, and 6 until its second data cut.  *Id*. at 7, 15.  And Plaintiffs concede there is no duty to disclose clinical trial data in real time (Doc No. 93 at 7) and do not even allege that Defendants received data allowing reportable observations to be drawn before that second data cut.  Doc No. 90 at 14.

Notwithstanding these facts, Plaintiffs persist in their challenge that statements made before the second data cut were "misleading partial truths" because Homology did not disclose

2

data from Patients 4 and 5. Doc No. 93 at 6-9. Absent a duty to disclose patient data in real time—which no one claims exists—Plaintiffs must plead that the allegedly omitted data from Patients 4 and 5 directly "contradicts defendants' statements." *Metzler Asset Mgmt. GmbH v. Kingsley*, 305 F. Supp. 3d 181, 207 (D. Mass. 2018). They have not done so.

To start, Plaintiffs' accusation that Homology "deliberately conceal[ed] the negative data from Patients 4 and 5" (Doc No. 93 at 8) ignores the express limits of Homology's statements characterizing the preliminary data, and the law on statements based on data cutoff dates. Doc No. 90 at 11, 14-15. When data cutoffs are used in clinical trials, plaintiffs cannot assume that data was known or could have been reliably reported before the cutoff date. *See Dresner v. Silverback Therapeutics, Inc.*, 2023 WL 2913755, at *10 (W.D. Wash. Apr. 12, 2023) (rejecting inference that clinical trial sites were "making [data] available" before cutoff and defendants "had access to that information at any given moment"). Courts, including the First Circuit, routinely hold that when data cutoffs are used in clinical trials, statements based on those data cutoffs are not contradicted by data collected after the cutoff. Doc No. 90 at 14-15. While Plaintiffs seek to distinguish these cases, including *Biogen*, on the basis that the data cutoff here occurred before the start of the alleged class period (Doc No. 93 at 8), that fact is irrelevant to whether statements limited to that data cutoff were misleading. *See* Doc No. 90 at 15. Here, as in *Biogen*, there is no dispute that Patients 4, 5, and 6 were dosed after the cutoff, and falsity allegations "may not rest upon clinical data that occurred after the cut-off date." *In re Biogen IDEC, Inc. Sec. Litig.*, 2007 WL 9602250, at *9-12 (D. Mass. Oct. 25, 2007).

Second, Plaintiffs' theory that Homology created "the false impression that the negative data did not exist and/or did not contradict the data shared" (Doc No. 93 at 8) is contradicted by Homology's statements describing preliminary results summarizing the data for Patients 1, 2,

3

and 3 as of the data cutoff date and clearly reiterating the limitations of that data.  Doc No. 90 at 11 (citing Stmts. 1-3, 6, 8).  Homology made clear its "initial clinical data [was] from the first three patients in the dose-escalation phase of the trial . . . as of the data cutoff of December 2, 2019" and that "[a] fourth patient was dosed in Cohort 2 subsequent to the data cutoff date and was therefore *not included in the analysis*."  Doc No. 91-3 at 13 (emphasis added).  Homology kept investors up to date when other patients were enrolled and dosed, and reiterated that additional data—including for the high-dose cohort—would not be released until the next data cutoff.  Stmt. 9.  No reasonable investor could be misled as to data that was expressly excluded from Homology's statements.  Doc No. 90 at 14 (citing *Metzler*, 305 F. Supp. 3d at 207).  These facts stand in stark contrast to the facts alleged in cases Plaintiffs cite (Doc No. 93 at 8-9), where undisclosed information directly contradicted statements that assured investors certain problems were in the past, or misled investors about the prospects for FDA approval.[1]

### 2.  Statements Made to and by Market Analysts Are Not Actionable

Plaintiffs argue that Ms. McNeely's email statement to an analyst that "[n]othing fundamental [had] changed" after a Facebook post allegedly leaked data from Patient 5 somehow concealed that "HMI-102 was both ineffective and dangerous."  Doc No. 93 at 10 (citing AC ¶¶ 62-63, 107).  No pheNIX trial data could support Plaintiffs' suppositions, as the dose-escalation phase was a Phase 1 trial intended to identify a potentially effective dose for further development.  Doc No. 90 at 4.  Plaintiffs do not dispute that Homology's development plans remained unchanged after it disclosed the "negative data from Patients 4 and 5" (Doc No. 93 at

---

[1] *Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 91 (1st Cir. 2008)  (falsity pled for statement that "the problem had been 'fixed'" when company planned to announce recall a week later); *In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 753 (1st Cir. 2016) (knowingly misleading for company to express optimism about its drug's "chances for approval with a 'favorable label' weeks after learning that the FDA had rejected [the] proposed label").

8), as reflected by the fact that it progressed with the dose-expansion phase of the pheNIX trial just as it had planned.  Doc No. 90 at 13.  Plaintiffs' cited authority is thus irrelevant, and in any event inapplicable because those cases concerned statements regarding the potential for FDA approval, not general, uncontradicted statements about general development plans.[2]

Plaintiffs challenge a separate and independent statement made by a Baird analyst reflecting his opinion on the "risk/reward dynamic" and price target (Stmt. 5), seeking to hold Defendants liable for that statement under an entanglement theory.  Doc No. 93 at 10 (citing AC ¶¶ 65-69, 112).  But Plaintiffs do not plead any facts sufficient to establish entanglement, which requires allegations showing that defendants "adopted the statements" or "intentionally foster[ed] a mistaken belief concerning a material fact."  *Id*. at 11.  Instead, Plaintiffs point only to a vague reference in the analyst report to a conversation, from which they assume some (unspecified) false statement was made.  *Id*. at 10.  That is not enough under First Circuit law.  *See*, *e.g.*, *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211, 230 (D. Mass. 1999) (dismissing claims that did not plead "time, place nor content" of "conversations with management").[3]

### 3.   Defendants' Post-November 2020 Statements Are Not Misleading

Plaintiffs concede, as they must, that statements made after November 2020 reporting the full results from the dose-escalation phase and Homology's decision to progress to the dose-

---

[2] *In re Transkaryotic Therapies, Inc. Sec. Litig.,* 319 F. Supp. 2d 152, 160-62 (D. Mass. 2004) (failing to disclose that the "FDA had in fact recommended additional clinical studies"); *In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 332 (S.D.N.Y. 2014) (defendants omitted facts that were "critical to the FDA's conclusion . . . it should not be approved"); *Gerneth v. Chiasma, Inc.*, 2018 WL 935418, at *5 (D. Mass. Feb. 15, 2018) (defendants omitted facts relating to the FDA's stated concerns about a Phase 3 trial).

[3] Plaintiffs mischaracterize the analyst's statement—through use of bracketed text—to suggest that it was Homology management who believed in the "risk/reward dynamic."  Opp. at 11.  In fact, the belief was that of the *analyst*.  *Compare* AC ¶ 69 ("Having spoken with FIXX management, we continue to favor the risk/reward") *with* Doc No. 93 at 11 ("[h]aving spoken with FIXX management, [they] continue[d] to favor the risk/reward dynamic").

expansion phase of the trial were literally true.  Doc No. 93 at 12; Stmts. 10-15, 19, 21-23.  And, Plaintiffs acknowledge that Homology repeatedly disclosed that it had made changes to the steroid regimen for the dose-expansion phase, based on "learnings" from the initial phase.  Doc No. 93 at 12.  To challenge these statements, Plaintiffs claim the statements were false because the modifications "increase[ed] the steroids used in the pheNIX trial" and the steroid regimen itself posed "severe safety risks."  *Id*. at 13.  There is a gaping hole in both omissions theories because Plaintiffs fail to identify any particular fact that was concealed.

Nowhere do Plaintiffs identify any patient data from the dose expansion phase—after Homology first announced modifications to its steroid regimen in November 2020—and have not identified any facts that contradicted Defendants' statements.  *Id*. at 12-13.  The only data Plaintiffs identify is from Patients 4 and 5.  *Id*.  But, that data was disclosed in November 2020.  Plaintiffs also challenge the pre-November 2020 statements claiming that data from Patients 4 and 5 showed HMI-102 was "dangerous" and that the steroid regimen was too low (*id.* at 1, 10), and then offer the contradictory claim that after the steroid regimen was increased, the same data somehow showed the new steroid regimen posed "severe safety risks."  *Id.* at 12-13.  Both cannot be true (and show Plaintiffs' claims are rooted in illogical speculation).  Plaintiffs' different interpretation of disclosed data is insufficient to plead fraud.  Doc No. 90 at 11-12.

Courts regularly reject unsupported assertions where, as here, "the bareness of the factual allegations makes clear that the plaintiff is merely speculating."  *Kader v. Sarepta Therapeutics, Inc.*, 2016 WL 1337256, at *14 (D. Mass. Apr. 5, 2016) (quotations omitted); *Maldonado v Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) ("conclusory statements are 'not entitled to the assumption of truth'").  Here, no facts support Plaintiffs' contention that severe "[s]afety [i]ssues" had occurred as a result of the steroid regimen.  Doc No. 93 at 12.  Even in hindsight,

6

Plaintiffs cannot identify any "severe safety risks" or even particular adverse events that led to the clinical hold—all they can say is "that the pheNIX study data revealed serious risks and dangers, which could necessitate a clinical hold" (Doc No. 93 at 21 n.7), even though Homology disclosed the risk of potential side-effects and a clinical hold.  Doc No. 90 at 8-9, 13.

Unable to identify omitted facts with the requisite particularity (*d*. at 14-17), Plaintiffs argue generally that Defendants concealed "known" safety risks, based on (1) "conflicting [] industry norms" and (2) "Homology's use of a different 'steroid regimen'" in a different trial (i.e., the pheEDIT trial).  Doc No. 90 at 13.  Neither supports Plaintiffs' contention, or contradicts any of Defendants' statements.  Plaintiffs do not identify any "industry norms," but simply name two companies without details as to the comparability of their (unidentified) genetic therapies or clinical trials, or published conclusions.  *Id*. at 13.  Plaintiffs ignore that materials summarizing industry practices published by the FDA itself—in connection with an FDA Advisory Committee Meeting on AAV toxicity risks (AC ¶ 171)—which confirm there was no norm or no one-size-fits-all solution for AAV genetic medicines that Homology failed to follow.  Doc No. 91-2 at 6.  And, Plaintiffs cannot logically rely on Homology's subsequent use of a different steroid regimen, in a different trial, of a different genetic medicine as a back-door to suggest that Homology knew that the pheNIX steroid regimen posed unspecified "severe safety risks" (Doc No. 93 at 13), as it is textbook fraud by hindsight.  Doc No. 90 at 15-16.  Indeed, Plaintiffs do not allege that the other, later trial had even begun at the time the FDA implemented its temporary clinical hold.  *Cf.* AC ¶ 170, Doc No. 91-15.

### 4.    Statements of Opinion and Corporate Optimism Are Not Actionable

***Opinions***.  Plaintiffs argue that they are not required to meet the pleading standard for opinions to challenge statements expressing Homology's beliefs regarding a dose's "potential to improve Phe reductions" and Defendants' interpretation of the safety profile of HMI-102.  Stmts.

11, 13, 25.  Specifically, Plaintiffs contend that because they allege there were significant safety concerns with the pheNIX trial, these statements were false regardless of what Defendants believed.  Doc No. 93 at 15.  That argument ignores the Supreme Court's decision in *Omnicare* and First Circuit law applying it, holding that statements describing what "[w]e [or defendants] believe" about a future event are quintessential opinion statements; and opinion statements are actionable only if they are made "without any reasonable basis" or are "objectively false."  Doc No. 90 at 18-19 (citing *Harrington v. Tetraphase Pharms. Inc*, 2017 WL 1946305, at *5 (D. Mass. May 9, 2017); *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 192-93 (2015)).[4]  Plaintiffs offer no facts establishing either, and they do not come close to showing that the opinion statements lacked a reasonable basis and were not believed by Defendants.  And while Plaintiffs argue that not all of the opinion statements are prefaced by "we believe" and so cannot be opinion statements (Doc No. 93 at 14), that argument disregards First Circuit law explaining that "even where no qualifying language" is used, the "substance and context of a statement" determines whether it is a statement of opinion, along with authority holding that statements interpreting trial data are opinions.  Doc No. 90 at 18 (citing cases).

 ***Corporate Optimism.***  Plaintiffs do not meaningfully dispute that statements characterizing pheNIX clinical trial results as "well-tolerated" or "encouraging," and that the safety profile of HMI-102 was "a tribute [to] the quality, manufacturing and safety of Homology's vectors," are puffery.  Doc No. 90 at 18.  Plaintiffs argue that Homology "pluck[ed] certain parts of statements out of context" but fail to explain what context was missing.  Doc No.

---

[4] Plaintiffs' authority does nothing to lessen its pleading burden.  Doc No. 93 at 11 (citing *Transkaryotic*, 319 F. Supp. 2d at 160-62).  The statements in *Transkaryotic* conveyed a vehement belief in FDA approval that was "in direct contradiction to known facts about the FDA's [negative] position with respect to [the] data."  *Id.*  Here, there is no identified omission and no contradiction that would come close to meeting the pleading requirements.

93 at 15.  Courts routinely dismiss statements "touting 'successful' or 'compelling' clinical support" within the context of clinical trials as non-actionable statements of puffery.  *See Thant v. Karyopharm Therapeutics Inc.*, 43 F.4th 214, 223 (1st Cir. 2022) (collecting cases).

### B.   Plaintiffs' Alleged Facts Support Good Faith, Not Scienter

Plaintiffs' scienter theory is that Defendants knew and concealed data suggesting that "HMI-102 was ineffective and severely dangerous" (Doc No. 93 at 1, 10), yet Homology nevertheless proceeded to expand to the next phase, exponentially increasing the size and cost of the trial.  Doc No. 93 at 7.  But Plaintiffs offer no credible explanation, much less particularized allegations, as to why Homology would do so if it knew that HMI-102 was ineffective, or that the steroid regimen posed severe safety risks.  Plaintiffs cannot overcome the more compelling inference that Homology acted in good faith:  it informed investors of the risks associated with the first-ever human trial of its AAV gene therapy, disclosed patient data at each planned data cut, and disclosed changes to the steroid regimen that it believed would mitigate safety risks.

### 1.   Plaintiffs Do Not Allege Intent to Deceive

Plaintiffs offer four purported bases for scienter, each insufficient to establish the necessary strong inference of scienter whether standing alone or taken together.

***Knowledge of Trial Data***.  Plaintiffs' principle scienter theory that Defendants knew about trial data that contradicted their public statements is unsupported and illogical.  Plaintiffs fail not only to identify any negative data that Homology concealed, but also to connect the dots between any such data and Defendants' statements in a manner that even suggests Defendants "were aware that they were withholding vital information" that rendered their statements knowingly false.  Doc No. 90 at 20 (citing *Metzler*, 955 F.3d at 207).

Plaintiffs argue that "at all relevant times," Defendants were in possession of and concealed "material adverse information" for Patients 4 and 5.  Doc No. 93 at 17.  But this

9

argument does not support scienter either before or after November 2020.  No pled facts even

suggest that Defendants made statements reporting on the first data cut while intentionally or

recklessly concealing real-time data for a future data cut.  Instead, Homology did exactly what it

said it would at every turn, reporting patient data for each data cut.  Plaintiffs are also wrong that

the success of HMI-102 depended on Patients 4 and 5.  Doc No 90 at 4-7.  No individual patient

was essential to the success of the trial, where its purpose was to select a dose for the next phase,

and Homology could continue testing different doses or steroid regimens until it had done so.

Indeed, Plaintiffs' theory that Defendants knowingly concealed data for Patients 4 and 5

is undermined by the full disclosure of that data.  AC ¶¶ 72-73.  While Plaintiffs argue (in a

footnote) that Homology "continued to conceal the adverse safety data from Patient 5 and, in

particular, the extent of HMI-102's toxicity and the need to modify its accompanying steroid

regimen," they admit the purportedly negative data was disclosed.  Doc No. 93 at 18 n.5

("Homology disclosed that Patients 4 and 5 exhibited Grade 3 alanine aminotransferase or

ALTs").  Such disclosures undercut any inference of scienter.  Doc No. 90 at 21 (citing cases).

As to statements made after November 2020, Plaintiffs' theory that Homology knew its

modified steroid regimen was insufficient or "posed severe safety risks" is doomed by logic and

contradictory allegations.  Doc No. 93 at 18-19.  At most, Plaintiffs point to the use of different

steroid regimens, in different trials, for different genetic medicines, at different times.  *Id.* at 13,

19.  But, Plaintiffs provide no details that would have allowed Defendants to conclude that the

pheNIX trial steroid regimen posed "severe safety risks," much less put them on notice that their

statements were knowingly false.  *See In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 44 (1st Cir.

2017) (allegation insufficient where it does not address "defendants' knowledge at the time of

the alleged misstatements").  The mere use of different steroid regimens in different trials does

10

not make any statement "so obviously suspect" that it would render Defendants' statements knowingly false or misleading (particularly where published FDA materials summarizing steroid regimens tested could not identify any clear solution (Doc No. 91-2 at 7)). *Local No. 8 IBEW Ret. Plan & Trust v. Vertex Pharms., Inc.*, 838 F.3d 76, 82-83 (1st Cir. 2016) (information must be "obviously suspect" to "draw a strong inference" of scienter).

*Facebook Post.*  Plaintiffs argue that the removal of a Facebook post allegedly by Patient 5 supports scienter because Defendants supposedly attempted to conceal the posted information. Doc No. 93 at 17-18.  Plaintiffs' opposition confirms this is sheer speculation, as it is unable to identify any contact between anyone at Homology and Patient 5.[5]  The actions Plaintiffs allege were taken in response to the Facebook post are inconsistent with any desire to conceal that data. Ms. McNeely's email to an analyst regarding the post did not address, dispute, or undermine the data allegedly disclosed by Patient 5.  AC ¶ 106.  And, Homology voluntarily disclosed full data from Patient 5 as part of the second data cut in November 2020.  *Id.* ¶¶ 72-73.

*Core Operations & Imputation*.  Plaintiffs cannot rely on the core operations theory by claiming HMI-102 was "critical" to the business, where they have failed to identify any data at all that contradicts Defendants' statements.  *Maldonado v. Dominguez*, 137 F.3d 1, 9-10 (1st Cir. 1998) (scienter "may not rest on a bare inference that a defendant 'must have had' knowledge"). The core operations theory does not permit Plaintiffs to leap from access to trial data to an assumption that the data must have contradicted Defendants' statements.  Doc No. 90 at 22-23.[6]

---

[5] In contrast, in Plaintiffs' cited cases, specific alleged facts suggested defendants took active steps to conceal their conduct.  Doc No. 93 at 18 (*citing In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1310 (D. Utah. 2007); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.*, 2005 WL 1365465, at *13 (D.N.J. June 7, 2005)).

[6] Plaintiffs' cited cases—*Carbonite* and *OvaScience* (Doc No. 93 at 20)—do not eliminate the requirement that scienter be pled with particularly.  In both cases, plaintiff identified facts that contradicted the statements and alleged that defendants knew as much.  *Carbonite*, 22 F.4th 1, 9-

***Motive to Raise Capital***.  Plaintiffs' motive allegations based on Homology's alleged need to secure funding (Doc No. 93 at 20) ignore the law and pled facts.  Plaintiffs do not attempt to grapple with authority holding that the desire to raise capital and expand business are routine corporate objectives that are insufficient to plead scienter.  Doc No. 90 at 22.

### 2.    Plaintiffs Have No Response to the Far More Compelling Non-Fraudulent Inference

Plaintiffs cannot reconcile the course of events here with a logical or compelling inference of scienter.  Plaintiffs do not even attempt to explain why Homology would disclose purportedly negative data, disclose it was modifying its steroid regimen based on that data, and then expand its trial exponentially beyond the initial six patients, if it knew of the parade of horribles about HMI-102 that Plaintiffs recite.

Plaintiffs similarly ignore the wealth of case law rejecting exactly this theory of fraud. *See* Doc No. 90 at 23-24 (collecting cases).  Here, the stakes were even lower for Homology, because it was at the beginning of development, as opposed to having expended resources on a large-scale Phase 3 trial.  The notion that Homology and its executives would tout HMI-102 knowing the dose it chose was "ineffective" or "toxic" or came with safety risks makes no sense when Homology could simply continue testing until it found the right dose and regimen to progress development, with little cost or impact on any potential application for FDA approval. At most, Plaintiffs' allegations, if true, establish that Homology "began testing an experimental drug, [and] encountered unexpected issues (as many pharmaceutical companies do)." *In re Regulus Therapeutics Inc. Sec. Litig.*, 406 F. Supp. 3d 845, 862 (S.D. Cal. 2019).

---

10 (1st Cir. 2021) (product had "never once done what it was supposed to do"); *OvaScience, Inc.*, 321 F. Supp. 3d 247, 255 (D. Mass. 2018) (defendants "claimed . . . to closely track all aspects of the treatment").

### C.       Plaintiffs' Alleged Corrective Disclosures Do Not Establish Loss Causation

Finally, Plaintiffs rehash their five loss causation theories without addressing any of the deficiencies identified in Defendants' Motion.  Doc No. 93 at 22-24.  First, Plaintiffs do not dispute that the April 15, 2020 Facebook post did not correct any of Homology's statements to that point in time, which pertained exclusively to results from the first data cut in December 2019.  The revelation of new information that Homology was under no prior duty to disclose cannot be corrective of fraud.  Doc No. 90 at 24.  Second, Plaintiffs argue that Homology's August 10, 2020 quarterly financial report was corrective (Doc No. 93 at 23), but they do not explain what was supposedly corrected by new information regarding the pheNIX trial.  Doc No. 90 at 25.  Third, Plaintiffs argue the November 6, 2020 announcement "revealed to investors that HMI-102 was, in fact, less effective and more dangerous than previously represented," but the November 6 announcement disclosed *new* patient data, based on a *new* data cut—which was not and could not be corrective of prior statements about different data.  *Id*. (citing *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839 (9th Cir. 2022)).  Fourth, Homology's announcement of a secondary offering does not correct any prior statement—it merely conveyed that Homology was raising additional capital, which it repeatedly told investors it would need to do.  Finally, Homology's February 18, 2022 announcement of the FDA's clinical hold was the materialization of a fully *disclosed* risk.  The analyst reports Plaintiffs rely on to claim that the hold "operated as a correction" (Doc No. 93 at 24) say no such thing and instead simply downgrade their price targets based on a disappointing development.  This predictable reaction reflects materialization of a known risk, not causation.  Doc No. 93 at 25 (citing cases).

Dated:  August 3, 2023

Respectfully submitted,

/s/ Michele D. Johnson

Michele D. Johnson (*pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
michele.johnson@lw.com

William J. Trach (BBO# 661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
william.trach@lw.com

Colleen C. Smith (*pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
colleen.smith@lw.com

Meryn C. N. Grant (*pro hac vice*)
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Facsimile: (424) 653-5501
meryn.grant@lw.com

*Attorneys for Defendants Homology Medicines, Inc., Arthur O. Tzianabos, W. Bradford Smith, Albert Seymour, and Theresa McNeely*

14

## CERTIFICATE OF SERVICE

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent on August 3, 2023 to those identified as non-registered participants.

/s/ Michele D. Johnson
Michele D. Johnson